JOHN T. PRATHER, *et al.*, V. JULIA A. REEVE.

1. DAMAGES FROM CATTLE, *Action For; Fence Viewers.* Where roaming cattle belonging to one person break through a lawful fence, enter upon the land of another, and there commit injuries, the owner of the land may dispense with any claim for a lien upon the animals, and sue the owner of the cattle for the injuries, without applying to fence viewers to determine the sufficiency of the fence, or to assess the damages.

2. LAWFUL FENCE; *Erroneous Instruction.* A fence of posts and planks, to be a lawful fence, must be *at least* four feet high, and an instruction to a jury, that a fence three feet ten inches, or eleven inches, at one particular place, if it would average four feet, or about four feet high, would be sufficient for a lawful fence, is erroneous. The maxim, *De minimis non curat lex,* has no application to the height of fences, under the statute. (Comp. Laws 1879, ch. 40, § 2.)

*Error from Chase District Court.*

ACTION brought by *Reeve,* against *Prather* and another, to recover for damages committed by defendants' stock trespassing upon plaintiff's lands. Trial at the May Term, 1879, when the court instructed the jury in regard to fences as follows:

" . . . The second simple question for you to. determine is, whether the fence at the place where the stock broke in was a lawful fence, without regarding the remainder of the fence around the inclosure. If a field is inclosed with a mile of fence, and four-fifths of it is down, (that is, fails to come up to the standard as required by law to be a lawful fence,) and yet stock breaks in over the fence, and the other fifth shows that it is a legal fence, stock that breaks in is responsible for the damages. Now then, that brings up the question, 'What is a legal fence?' I will read that portion of the section which applies to a fence of the character that this has been shown by the evidence to be, namely, a post-and-board fence :

" 'All fences composed of posts and planks shall be at least four feet high. All fences composed of rails or lumber, the bottom rail, board or plank shall not be more than two feet from the ground. . . . Fences of the material, and of the height and sufficiency aforesaid, shall be deemed legal and sufficient fences.'

"Then the law describes the kind of a fence which constitutes a lawful fence of the kind shown to be in dispute, a

post-and-board or plank fence: 'The fence must be four feet high; the lower board must not be more than two feet from the ground.' Now you will see that the question of posts can't enter or cut any figure in the case; it must be a post-and-plank fence; the other circumstances or particulars are immaterial. The law nowhere provides in post-and-plank fences that the posts shall be any specified distance apart; they may be two or twenty feet apart. Of course, gentlemen of the jury, while the law specifies that the fence shall not be less than four feet high, yet all these sections are required to be considered liberally. If a fence should be three feet ten inches or eleven inches at one particular place, but should average four feet high, the law don't deal with trifles. The object of the law is to have a fence that will be sufficient in height to turn the average kind of stock, and the law would not recognize a trifle, or trifling testimony, which would show that in one particular place the fence was a little low — three feet and ten or eleven inches. You know this in doing business for yourselves — you scarcely notice trifles of that kind; much less will the law notice anything of the kind. You are to determine from the evidence in the case, whether this fence was at the place the break is said to have occurred when the stock broke through, if at all, in substance in compliance with the law — that is, whether it is four feet high; whether composed of posts and planks; whether the lower plank was not more than two feet from the ground; and in addition to this, whether it was substantially built, so that it would prevent stock from getting through, or in the language of the statute to which my attention was called, whether 'such fence [was] substantially built and sufficiently close to prevent stock from going through.' "

Verdict for plaintiff. New trial denied, and judgment for plaintiff. The defendants bring the case here.

*W. S. Romigh*, and *Sanders & Carswell*, for plaintiffs in error.

*S. N. Wood*, and *Cochran & Ransford*, for defendant in error.

The opinion of the court was delivered by

Horton, C. J.: Julia A. Reeve, the defendant in error, brought suit before a justice of the peace of Chase county,

against John T. and William E. Prather, to recover damages committed by their stock trespassing upon her lands in the fall of 1877, and also in the fall of 1878. The justice gave judgment in favor of the plaintiff, and the Prathers appealed to the district court. Trial was had at the May term, 1879, before a court and a jury. Judgment for the plaintiff for $67.50, and costs. The Prathers excepted, and bring the case here.

It is claimed on the part of [the plaintiffs in error (defendants below), that as no evidence was introduced upon the trial tending to prove that fence viewers ever viewed the fence of defendant in error (the plaintiff below), or assessed her damages, or were ever applied to in the matter, no cause of action was made out. In the same line it is further claimed by counsel, that the duties of fence viewers are judicial; that their jurisdiction is exclusive; that their decision is conclusive; and finally, that no other court or tribunal can take jurisdiction of the sufficiency of fences, or of damages caused by domestic animals breaking into inclosures, until the viewers have exercised their jurisdiction. Counsel go too far in their assumptions. When a statute creates a liability, and gives a right not known to the common law, such statute at the same time giving a specific mode for the assertion of the right, as a rule that mode and that alone must be pursued. This is not such a case. The statute relating to fences (ch. 40, Comp. Laws 1879) modifies the common law so far that no action will lie for injuries done on real estate by trespassing cattle, unless the real estate is inclosed with a sufficient fence; and § 33 of the act gives the owner of the inclosure authority to take into possession the animals trespassing, and keep them until all damages, charges and costs are paid; but §§ 27 and 28 of the act create no new liability, unknown to the common law. They simply afford an additional method of settling damages for the trespassing of animals, and of furnishing proof in actions brought to recover such damages. The proceedings under article 4 are not exclusive, but only cumulative, or additional to the remedy of the common law.

Parties claiming damages for such injuries may take the trespassing animals into possession, and accept the provisions of those sections; and in such case, the assessment of the viewers must be received as *prima facie* evidence of the amount of the damages actually sustained; but on the other hand, if they choose, they may dispense with the claim for a lien on the animals, and sue directly, without applying to the viewers at all.

Ch. 5*a*, Comp. Laws 1879, provides that all persons who shall have any controversy may submit such controversy to the arbitration of any person to be mutually agreed upon by the parties, and they may make such submission a rule of any court of record in this state; yet no one would claim that this statute is compulsory, or that a person having a cause of action against another shall not recover until he submits his demand to arbitration. Again, the mechanic's-lien law gives parties liens on real estate for the amounts due for labor, materials, etc., if certain proceedings are taken; but the advantage of these proceedings is at the option of the persons performing the labor, or furnishing the materials. If they do not choose to file liens, they are not thereby debarred from recovering for the labor or materials, in an ordinary action.

Objections are also taken to the charge of the court in reference to a legal fence. The fence through which the stock was alleged to have broken into the inclosure, was a post-and-board or plank fence. The direction concerning the height was:

"While the law specifies that the fence shall not be less than four feet high, yet all these sections are required to be considered liberally. If a fence should be three feet ten inches or eleven inches at one particular place, but would average four feet, or about four feet high [it would be sufficient]. The law don't deal with trifles. The object of the law is to have a fence that will be sufficient in height to turn the average kind of stock, and the law would not recognize a trifle or trifling testimony that would show that in one particular place the fence was a little low, three feet and ten or eleven inches. You know this in doing business for yourselves. You scarcely notice trifles of that kind."

This language might answer in ordinary business trans-actions, but was out of place in the charge to the jury in this action. It tends to excuse a non-compliance with the statute, and gives the jury a leverage to find damages even if the stock broke through a fence at a place less than four feet high. Sec. 2, ch. 40, provides that all fences composed of posts and rails, posts and palings, posts and planks, or palisades, or of stone, or composed of posts .and wires, or those composed of turf, shall be at least four feet high. Under the direction given, a fence of posts and planks three feet ten inches high would be a lawful fence. Such is not the reading of the statute. The height of the fence is particularly mentioned, and it is plain that a fence of the character of the one in dispute, to be lawful, must be at least four feet high. The maxim, *De minimis non curat lex*, has no room for operation in this case. To be on the safe side, persons intending to have their lands inclosed by a lawful fence ought to construct the fence in excess of four feet, rather than below that height. With the exception noted, the charge of the court seems a correct exposition of the law.

The judgment of the court below will be reversed, solely on account of the misdirection of the jury, and the case remanded for a new trial in accordance with the views herein expressed.

All the Justices concurring.