H. W. McAfee, *Appellee,* v. O. E. Walker, *Appellant.*

No. 16,439.

SYLLABUS BY THE COURT.

1. PARTITION FENCES—*Oral Agreement.* Neither the statute of frauds nor the act relating to partition fences renders unenforceable an oral arrangement by the occupants of adjoining lands that until the agreement is changed by mutual consent or the withdrawal of one of the parties each shall maintain one-half of a division fence.

2. DAMAGES—*Trespassing Animals.* Where a bull over a year old escapes from the land of the owner to that of a neighbor, by reason of the failure of the latter to keep up a portion of the division fence in accordance with an agreement between them, no action for the resulting damages can be maintained under the statute (Laws 1872, ch. 194, § 1; Gen. Stat. 1901, § 7380) forbidding owners of such animals to permit them to run at large.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed March 12, 1910. Reversed.

*Robert Stone, J. B. Larimer,* and *James A. Troutman,* for the appellant.

*T. F. Garver,* and *R. D. Garver,* for the appellee.

The opinion of the court was delivered by

MASON, J.: H. W. McAfee and O. E. Walker occupied adjoining farms. McAfee claimed that he had sustained losses by reason of the trespass on his premise of bulls over a year old which Walker owned and

permitted to run at large in violation of law. He sued for damages and recovered a judgment, from which Walker appeals.

Walker defended upon the ground, among others, that if his animals did go upon the land of McAfee it was by reason of defects in the portion of a line fence which it was the duty of the latter to keep in good repair, in virtue of a contract between the adjoining owners. In this court the contention is made in behalf of McAfee that no right can be asserted under such a contract because it was not shown to have been in writing. The question so presented is necessarily preliminary and will be first determined. There is a singular diversity of judicial opinion relating to the application of the statute of frauds to agreements for the maintenance of line fences, which can only partially be accounted for by differences in local statutes. (19 Cyc. 471; 68 Am. Dec. 626, 627, note.) The oral agreement considered in *Osborne v. Kimball,* 41 Kan. 187, was specifically stated to be "a permanent one, to continue always" (p. 189), and was conceded not to admit of possible performance within a year. It therefore was held to require written proof. The fencing act (Gen. Stat. 1868, ch. 40, art. 3, § 13; Gen. Stat. 1901, § 3084) provides that adjoining owners may agree for the division of partition fences, and that such agreements when duly recorded shall be binding upon succeeding owners of the land. That provision probably implies that, in order to bind the successors of the parties making it, such a contract, even if not intended to be perpetual, must be in writing. (*De Mers v. Rohan,* 126 Iowa, 488.) But no reason is apparent why adjoining occupants may not orally agree to divide the work of keeping up a line fence as a temporary arrangement, binding until abandoned by mutual consent or until one party or the other withdraws from it (Browne, Stat. Frauds, 5th ed., § 276a), and that seems to have been the character of the understanding

here relied upon.  This view does no possible injustice in the present case.  An agreement by which McAfee was to keep up the north half of the division fence and Walker the south half was alleged in the answer, admitted in the reply, testified to by both parties, and assumed to be valid in the instructions.

The vital question in the case relates to the only instruction given concerning that agreement.  The county commissioners were shown to have made an order under the herd law (Laws 1872, ch. 193, § 1; Gen. Stat. 1901, § 7466) directing that neat cattle should not be allowed to run at large.  This point is contested, but upon insufficient grounds.  If the fact were otherwise it would not be material, for the statute itself makes the order as to bulls over a year old.  (Laws 1872, ch. 194, § 1; Gen. Stat. 1901, § 7380.)  Therefore, if Walker permitted his animals to "run at large" within the meaning of the phrase as used in the acts referred to, he was liable for any injury that McAfee suffered in consequence thereof.  The jury were instructed in substance that if Walker permitted his animals to be in a pasture not enclosed with a legal fence, or by one that would turn them, and by reason thereof they went upon McAfee's premises, they would be going at large within the meaning of the statutes; that if he did this with knowledge or notice of this condition of the fence, the fact that, after the parties had by agreement divided it, McAfee had failed to maintain his half would be immaterial.  This instruction permitted a recovery even for damages occasioned by the failure of McAfee to live up to his agreement regarding the fence, and in that respect we think deprived Walker of an opportunity to make a defense to which he was entitled.

This court has held that where the owner of land adjoining a railroad turns stock into a pasture surrounded by a legal fence on all sides excepting along the right of way, which the company in violation of its duty leaves

open, the animals are not deemed to be running at large. (*Gooding v. A. T. & S. F. Rld. Co.*, 32 Kan. 150.) But under such circumstances it is held that the owner would have failed to "confine" his stock, a distinction being made between the two expressions. (*K. P. Rly. Co. v. Landis*, 24 Kan. 406.) True, it was said in *St. L. & S. F. Rly. Co. v. Mossman*, 30 Kan. 336, that "the words 'confined' in one act, and 'prohibited from running at large' in the other act, mean substantially the same thing" (p. 341), but this was characterized as a dictum and practically disavowed in *A. T. & S. F. Rld. Co. v. Riggs*, 31 Kan. 622, 630. The difference has since been noted and acted upon, and has recently been made the basis of a decision. (*Railroad Co. v. Jackson*, 70 Kan. 791.) In *Mo. Pac. Rly. Co. v. Shumaker*, 46 Kan. 769, it was said:

"There is nothing in the statute that requires a bull over one year of age to be confined, nor is there anything prescribing the character of restraint to be thrown around such an animal. The statute simply prescribes that such an animal shall not be permitted to run at large." (Page 772.)

Although these decisions were made in railroad right of way cases, the definition they attach to the phrase "running at large" necessarily applies whenever the statute is invoked in behalf of one whose injury has been occasioned by a failure in the performance of his own duty. The common law places the responsibility wholly upon the owner of animals to keep them from his neighbor's premises, and makes him liable for any injury resulting from his failure to do so. The fencing act (Gen. Stat. 1868, ch. 40, art. 1, § 1; Gen. Stat. 1901, § 3071) changes the rule and requires the neighbor to protect himself from such injury up to a certain point by erecting a fence of a fixed power of resistance. The adoption of the herd law in turn eliminates the intervening statute and restores the common law, by canceling that requirement. But whenever the obligation to maintain a barrier is reëstablished, whether by legis-

lation, as in the case of the law requiring a railroad right of way to be fenced, or by contract, as where the owners of adjoining tracts agree that each shall maintain one-half of a line fence, the burden of duty again shifts, and cattle are not deemed to be running at large as to any one whose own fault causes their freedom from restraint.

"The fence law of 1868 (Gen. Stat. 1901, § 3071 et seq.) modified the common-law rule of liability for damages done by trespassing animals, and relieved the owner thereof from all liability for damages resulting therefrom, except trespasses committed on lands enclosed with the legal fence described in the act. . . . The herd law of 1872 (Gen. Stat. 1901, § 7466 et seq.), where adopted, is a readoption of the common law in this respect as it existed prior to the enactment of the fence law of 1868." (Railway Co. v. Olden, 72 Kan. 110, syllabus.)

The liability of the owner to prevent his animals from straying upon his neighbor's premises was the same at common law as under the herd law. He was under a positive duty to keep them up. Yet it is held without dissent that this duty yielded as readily to a counter obligation resulting from a private contract as to one created by statute.

"There can be no doubt that adjoining owners may, by agreement, . . . assume an obligation to maintain sufficient partition fences against each other's cattle, so as to abrogate the common-law rule. . . . Where an owner of land is bound by agreement, prescription, or statute to maintain a fence, through defects in which his neighbor's cattle enter upon his land and do damage, without the fault of the owner of such cattle, he can not recover therefor." (49 Am. Dec. 251, note.)

"Where, by statute, prescription or agreement, adjacent owners are jointly bound to maintain a partition fence, and neither is severally bound to maintain any particular part of it, they are remitted to their common-law obligations, and each must keep his cattle on his own land at his peril, and will be liable for their trespasses upon his neighbor, without regard to the suffi-

ciency or insufficiency of the partition fence. . . . If a partition fence has been divided, either by statute, agreement or prescription, and a particular portion assigned to each of the adjacent proprietors to keep in repair, each is liable for trespasses committed through defects in his own part of the fence by his cattle upon his neighbor's land. . . . Certain it is, that the plaintiff in such a case can not recover for trespasses committed through his own defective portion of the fence, whether the defendant's portion is defective or not. . . . And if both parts of the fence are defective, and it is not shown through which part the trespassing animals entered, there can be no recovery." (68 Am. Dec. 636, 637, note.)

"The owner of land who fails to perform his duty in keeping up his share of a division fence can not recover in trespass for damages done by trespassing animals resulting therefrom." (22 L. R. A. 62, note.)

"One who fails to maintain his portion of a partition fence properly is without redress for injuries occasioned by his neighbor's stock breaking through such portion, as the loss is occasioned by his own negligence." (19 Cyc. 488.)

There is no reason why the rule should be different where the obligation of the cattle owner is defined by statute, and it has in several instances been applied where that was the case. In *Field v. Bogie,* 72 Mo. App. 185, the syllabus reads:

"Where parties build a partition fence and agree that each will keep in repair a different portion thereof, neither can impound the stock of the other escaping onto his premises through his portion of the partition fence by reason of its bad repair; nor are their rights affected by the adoption in the county of the law restraining animals from running at large."

In *Brown v. Sams* [Tenn. 1908], 109 S. W. 513, it was said:

"The plaintiff . . . insists that the defendant is liable for trespass committed by the hogs under [a statute] making it unlawful to allow live stock to run at large. . . . The defendant's hogs were not running at large, but in his field, and escaped upon the

premises of the plaintiff by the failure of the latter to keep up his part of the joint fence. He can not complain of an injury the direct result of his own wrong." (Page 514.)

In *Duffees v. Judd*, 48 Iowa, 256, under a statute providing that partition fences should be maintained under certain circumstances even where a herd law had been adopted locally, the trial court rejected proof of its adoption because the defendant's cattle were not shown to have been running at large. The supreme court said:

"As we have not the evidence before us, we must presume, in favor of the ruling of the court, that the objection which defendant made to the introduction of this testimony did in fact exist, and that there was no evidence tending to show that the cattle were running at large, but that, upon the contrary, the evidence showed that the cattle broke into plaintiff's enclosure from an adjoining enclosure, through the division fence separating plaintiff and said adjoining enclosure. The position of appellant seems to be that cattle are running at large whenever they pass from the enclosure of the owner upon an adjoining enclosure, although they may pass through the portion of a partition fence which belonged to an adjoining owner, and which he had neglected to maintain in repair. . . . We are satisfied that this position of appellant is not correct." (Pages 258, 259.)

The case of *Conway v. Jordan*, 110 Iowa, 462, seems exceptional. There, under a statute providing that "any person may take possession of any . . . bull found at large" (p. 464), it was held that "any person may take up a bull running at large, no matter how he may have escaped from the control of the owner" (p. 465), and that such an animal is deemed to be running at large although he escaped through a pasture fence which it was the distrainor's duty to maintain, if the owner turned him into the pasture with notice that the fence was insufficient to restrain him. This decision may have been influenced by the fact that

another section of the same act (which was held to have no application) specifically provided that the owner of domestic animals should not be liable in damages for injury done by them resulting from the failure of the person suffering the loss to maintain his half of a division fence.  The court seems to have construed the statute as showing a purpose to make a distinction in this regard as to male animals.  A similar view on the part of the legislature had been evidenced at the time the case was decided (but not when it arose) by an amendment in terms requiring the owners of bulls to "restrain" them.   (Iowa Code, 1897, § 2312.)

In order to warrant a recovery by McAfee, either the animals must have entered his land at some place where he was not bound to maintain a fence, or if the entry was made at a point where that duty rested on him it must not have been accomplished by reason of a defect therein due to his negligence.  If the kind of barrier the parties had agreed to maintain was insufficient to turn the bulls, Walker was bound to provide some other and effectual means of restraint, and was liable for any injury resulting from his breach of this obligation.  Whatever damages McAfee was entitled to were recoverable without invoking the action of the fence viewers.  (*Prather v. Reeve,* 23 Kan. 627.)

The pleadings do not specify just how strong a fence the parties agreed to maintain, nor is the evidence more explicit on that point.  Perhaps in the absence of any reason to the contrary they may be presumed to have had in mind the standard fixed by law.  No reason is apparent, however, why they might not have agreed to build a barrier of a greater or of a less strength than that of a legal fence, or to preserve one already in existence in its then condition.  If the kind of fence the contract called for was not sufficient to

turn the bulls, the omission to keep it up could not have caused the plaintiff's injury; otherwise it might.

The judgment is reversed and the cause remanded for a new trial.