No. 23,820.

W. H. Miller and Claude Miller, Appellees, v. Ed Parvin, Appellant.

SYLLABUS BY THE COURT.

1. Trespassing Cattle — Findings — Fences — Value of Property Destroyed. Testimony examined and held sufficient to sustain the finding as to the sufficiency of the fence, the value of the cane destroyed and the judgment rendered.

2. Same—Herd-law Counties—Liability of Owners of Cattle. In herd-law counties the liability of the owner of live stock for trespass committed by his cattle upon the crops of an adjoining landowner is the same as at common law, such owner being bound at his peril to keep his cattle from committing such trespass.

Appeal from Ness district court; Albert S. Foulks, judge. Opinion filed June 10, 1922. Affirmed.

*L. A. Madison,* and *Carl Van Riper,* both of Dodge City, for the appellant.
*Lorin T. Peters,* of Ness City, for the appellees.

The opinion of the court was delivered by

West, J.: The defendant appeals from a judgment for damages alleged to have been caused by his cattle destroying the plaintiffs' cane.

The petition alleged that in December, 1918, defendant allowed his cattle to escape unlawfully and trespass on the plaintiffs' land and destroy twenty tons of cane, to the plaintiffs' damage of $600. The answer was a general denial.

Claude Miller testified that on December 3 he found five or six steers in the plaintiffs' field. There were 135 shocks of cane; he saw the field the next month and there was nothing left except two or three little piles that stuck up through the snow; the fence separating the plaintiffs' field from the defendant's pasture was made of two wires on stone posts; about the 17th of December he drove out forty-five head of cattle the first time he saw them in the field, and there were close to a hundred the next time.

The case was tried by the court and taken under advisement, and findings of fact were made to the effect that the defendant's cattle destroyed a large part of the plaintiffs' crop of cane of twenty acres which produced about fourteen tons, worth $30 a ton, the total value of the cane destroyed being $330; that the defendant's fences were not sufficient to restrain the cattle, and that the herd law was in effect; that they were running at large within the meaning thereof.

The defendant complains of the finding that the fence was insufficient. He asserts that the feed was not worth the amount named and for which judgment was entered.

Claude Miller testified that the forty-acre field was enclosed with three sides of fence, but one side was poor.

"That fence did not belong to me, it belongs to the range Mr. Parvin was using. I presume they had not fenced that yet. It was two wires on stone posts. That was on the north side of our field, separating the field from Parvin's pasture."

The defendant testified, among other things:

"Immediately south of my pasture and north of Miller's field there was hay land and the east side was field. That was not used as pasture land. Between that and Miller's field I think there were two wires on stone posts. It was forty or fifty feet between most of them. . . . I saw his field the day he came over to see me. We tried to keep my cattle in the pasture. The cattle

were kept in the pasture with four and three wire fences all the month of December, and were not turned out of the pasture. A three-wire fence is a reasonably good fence to (re)strain cattle. I have three wires every place in the pasture, except where there are four wires. The cattle broke the fence down and got out."

Howard Norman testified that the fence was not sufficient to restrain that kind of cattle, "because it was not kept up. There was not sufficient wire on the posts." He said these cattle gave considerable trouble on the ranch the whole season. "They were real breachy."

The case seems to have been tried on the fence and herd-law theory, as indicated by the evidence and also by the findings of the court. *Railway Co. v. Olden*, 72 Kan. 110, 83 Pac. 25, involved damages for the loss of live stock which had gone from a pasture field upon the right of way, where they were killed by a passing train. The pasture was not enclosed with a statutory legal fence. It was contended that in a herd-law county if the stock escape from an enclosure without the owner's fault he cannot recover against the company for killing them unless the enclosure was protected by a legal fence. The court said the effect of the fence law was to modify the common law so the owner was not liable for injuries committed by trespassing stock except to those whose lands were enclosed with a legal fence.

"The adoption of the herd law is the readoption of the common law in this respect, and the owner of cattle is liable for injuries committed by them in a herd-law county, regardless of the fence law. . . . If the stock killed be the ordinary farm stock, and the owner have the pasture enclosed with an ordinary fence, such as is generally required to restrain that kind of stock, and they escape without his fault, he is not guilty of negligence and is not guilty of permitting the stock to run at large, and he may recover regardless of the fence law." (pp. 112, 113.)

That is, he could recover against the railroad company. In *McAfee v. Walker*, 82 Kan. 182, 107 Pac. 637, the controversy was between the occupants of adjoining land regarding a partition fence which had been maintained between them. It was said:

"The common law places the responsibility wholly upon the owner of animals to keep them from his neighbor's premises, and makes him liable for any injury resulting from his failure to do so. The fencing act . . . changes the rule and requires the neighbor to protect himself from such injury up to a certain point by erecting a fence of a fixed power of resistance. The adoption of the herd law in turn eliminates the intervening statute and restores the common law, by canceling that requirement. The liability of the

Miller v. Parvin.

owner to prevent his animals from straying upon his neighbor's premises was the same at common law as under the herd law. He was under a positive duty to keep them up." (pp. 185, 186.)

The case of *Hazelwood v. Mendenhall*, 97 Kan. 635, 97 Pac. 636, involved the question of damages committed by animals permitted to run at large and injure crops upon unenclosed land that without the fault of the owner had escaped from a pasture surrounded by a fence strong enough to show the exercise of reasonable diligence for their restraint. It was held that the herd law did not apply. An instruction had been asked, the action being brought under the herd law, that no recovery could be had for injuries done on unenclosed land by animals escaping without the fault of their owner from a pasture enclosed by a legal fence. This was refused, and the court charged that the plaintiff might recover even if the cattle had escaped from an enclosure surrounded by a legal fence and injured crops upon the plaintiff's unenclosed land before they could be apprehended. It was held that the requested instruction should have been given, citing the Olden and Walker cases. It was said:

"The requirement that the crops shall be protected by a legal fence is canceled by the herd law only so far as relates to animals that are 'running at large.' Any that without fault of their owner have escaped from an enclosure surrounded by a barrier reasonably adapted to their restraint are not regarded as within that term, and the definition of a legal fence has reference to that which protects crops, and not to that which restrains cattle within an enclosure." (p. 637.)

The expression in the Olden case was reiterated that the fence law does not furnish a rule by which to determine whether the owner of the stock in herd-law counties is guilty of negligence in enclosing them.

Ruling Case Law states:

"At common law, a land-owner was not bound to maintain fences between himself and his neighbor except by prescription or agreement, nor could he, without such agreement or prescription, be held to contribute to the expense of fences erected by his neighbors. As has been already stated, however, each owner at his peril was bound to keep his cattle on his own lands, whether the lands of his neighbor were fenced or unfenced." (11 R. C. L. 880.)

"At common law the proprietor or tenant of land is not obliged to fence it, but every man is bound at his peril to keep his cattle on his own premises. This he may do in any manner he chooses, but in the event of their escape, he is held liable for their trespasses on the land of others, whether fenced or unfenced, no man being required to fence against the cattle of others, in the absence of an agreement, prescription, or statute to the contrary." (11 R. C. L. 873.)

The law seems to be settled that in a herd-law county one who pastures cattle upon his own, land must at his peril keep them from trespassing upon the crops of adjoining landowners, regardless of the character of the fence separating the two tracts.

The same result having been reached by the trial court, and the evidence fairly showing the trespass and damage found by the court, the judgment is affirmed.