(706 P.2d 465)

No. 57,257

RICHARD WALBORN and GREG WALBORN, *Appellees*, v. DONALD STOCKMAN, *Appellant*.

—

Opinion filed September 12, 1985.

*Craig C. Blumreich* and *James E. Benfer, III*, of Benfer and Farrell, of Topeka, for appellant.

*Mark V. Parkinson*, of Payne & Jones, Chartered, of Olathe, for appellees.

Before PARKS, P.J., REES, J., and JEROME HARMAN, C.J. Retired, Assigned.

REES, J.: Defendant Donald Stockman appeals from a judgment entered against him in the amount of $2,390.17 for property damage sustained by plaintiffs Richard and Greg Walborn when their car collided with Stockman's cow on a public highway. We reverse.

Plaintiffs brought this action against defendant on what we deem to be three theories of negligence and one of strict liability: (1) negligence of defendant in allowing his cow to run at large in violation of the county herd law, K.S.A. 47-301 through -305, as adopted by Leavenworth County; (2) negligence of defendant, a nonresident cow owner, in failing to check on his cow more often; (3) negligence of defendant in having an inadequate fence to be proved under the doctrine of res ipsa loquitur; and (4) strict liability of defendant in allowing his cow to run at large in violation of the county herd law, K.S.A. 47-301 through -305, as adopted by Leavenworth County. The trial court, without specifying which theory of negligence it chose to rely on, found that defendant was 100% negligent in allowing his cow to be out of pasture and on a public thoroughfare. The trial court also accepted plaintiffs' alternate theory, finding that defendant was strictly liable under the county herd law.

Defendant first argues that on any negligence theory plaintiffs failed to present sufficient competent evidence to support the trial court's finding defendant was negligent. We agree.

First, the Walborns in their petition brought this action under what is known as the county herd law, K.S.A. 47-301 through -305. K.S.A. 47-301 grants to the boards of county commissioners of the different counties the authority "to direct by an order what animals *shall not be allowed to run at large* within the bounds of their county." (Emphasis added.) In 1978, Leavenworth County, where this accident occurred, became a herd law county under K.S.A. 47-301 through -305 by declaring that "[h]orses, mules, asses, cattle, hogs, sheep or goats shall not be allowed to run at large within the bounds of Leavenworth County, Kansas." Leavenworth County Resolution 1978-38. See *Lindsay v. Cobb*, 6 Kan. App. 2d 171, 627 P.2d 349, *rev. denied* 229 Kan. 670 (1981).

In construing the county herd law, K.S.A. 47-301 *et seq.*, Kansas courts have consistently held that "shall not be allowed to run at large" means more than that an animal was simply unattended; it requires proof that the owner was negligent in failing to keep the animal enclosed:

"Can it be held that this animal [simply found unattended] *was allowed to run at large?* It would not seem that plaintiff could be charged with any violation of this statute [Comp. Laws 1879, p. 935] when he had taken reasonable precautions to confine his animal." *Kansas Pac. Ry. Co. v. Wiggins*, 24 Kan. *588, *590 (1880).

In 1929, the Kansas Legislature enacted what is for all practical purposes a statewide herd law, which simply provides "[t]hat it shall be unlawful for any neat cattle, horses, mules, asses, swine or sheep to run at large." K.S.A. 47-122. Since the legislature in drafting the statewide herd law did not use the words "permit" or "allow" to run at large, as it had in the other herd laws (*e.g.*, K.S.A. 47-101 to -103; K.S.A. 47-105; K.S.A. 47-112; K.S.A. 47-301 to -305; K.S.A. 47-309 to -312; K.S.A. 47-313), plaintiffs injured by trespassing livestock began to sue under this statute, asserting it imposed strict liability upon the livestock's owners. See generally, Casad, *The Kansas Law of Livestock Trespass*, 10 Kan. L. Rev. 55 (1961).

Our Supreme Court, in companion cases, disagreed. *Wilson v. Rule*, 169 Kan. 296, 219 P.2d 690 (1950); *Abbott v. Howard*, 169 Kan. 305, 219 P.2d 696 (1950). Borrowing the negligence concept

from county herd laws, the court held in these cases that the phrase "to run at large" meant the same in K.S.A. 47-122 as in K.S.A. 47-301; that liability under either statute could be predicated only upon negligence of the owner in confining his animal. *Wilson v. Rule*, 169 Kan. at 303; *Abbott v. Howard*, 169 Kan. at 315. The court fashioned this rule:

"[T]he plaintiff ha[s] the burden of proving in order to make a prima facie case, that the [animal] with which plaintiff collided was unattended upon the highway because its owner had failed to exercise due care in enclosing it, under all the surrounding facts and circumstances." *Wilson v. Rule*, 169 Kan. at 303.

Under this rule, if the animal is an ordinary one, and the fence is that required to restrain an animal of its kind, the owner will not be guilty of permitting his animal to run at large. *Wilson v. Rule*, 169 Kan. at 302.

From these cases' progeny comes the most comprehensive definition of "running at large." *Cooper v. Eberly*, 211 Kan. 657, 508 P.2d 943 (1973), and *Clark v. Carson*, 188 Kan. 261, 362 P.2d 71 (1961), cases brought under the statewide herd law, K.S.A. 47-122, defined "to run at large" as follows:

" 'As used in the Statute, "running at large" is the strolling, without restraint or confinement, as wandering, roving and rambling at will without restraint. Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where animals escape from their owner, after due precaution to secure them has been taken, and without fault or negligence on his part, and he makes immediate and suitable efforts to recover them.' " *Cooper v. Eberly*, 211 Kan. at 668; *Clark v. Carson*, 188 Kan. at 265.

We find no reported cases under the county herd law, K.S.A. 47-301 *et seq.*, since *Miller v. Parvin*, 111 Kan. 444, 207 Pac. 826 (1922). However, since Kansas courts in construing the statewide herd law borrowed the county herd law's interpretation of "to run at large" and more clearly delineated it, we think it only appropriate to apply that more comprehensive definition to this county herd law case. Therefore, to prove that Stockman was negligent in this case for having allowed his cow to run at large in violation of K.S.A. 47-301, the Walborns needed to prove that under all the surrounding facts and circumstances the cow was unattended because Stockman failed to exercise due care in keeping it enclosed. *Wilson v. Rule*, 169 Kan. at 303.

Bearing those principles in mind, we have examined the record on appeal, including the trial transcript. We simply find

no evidence to support a finding that Stockman was negligent within the meaning of the county herd law as adopted in Leavenworth County. The sum total of the Walborns' evidence showed only how and where the accident occurred; what the condition of the fence next to the road was; and what damages the car sustained. Stockman, whose testimony was uncontroverted, testified that he did not own the pasture next to the road but a pasture two pastures away; that when he checked his fences by driving around the perimeter of the pasture after the accident the fences looked "pretty good . . . no strands down"; all posts were up.

The rule is well established that a factfinder cannot disregard uncontroverted and unimpeached testimony or the only evidence upon a material question in controversy and return a verdict in direct opposition. *Briscoe v. Ehrlich*, 9 Kan. App. 2d 191, 192, 674 P.2d 1064, *rev. denied* 235 Kan. 1041 (1984). Thus, in light of Stockman's uncontroverted testimony, we must find that the Walborns failed to show a lack of due care on Stockman's part in keeping his cow enclosed. *Wilson v. Rule*, 169 Kan. 303.

As for the theory that Stockman was negligent as a nonresident cow owner in failing to check on his cow more often, we are again faced with undisputed evidence that Stockman or his brother visited the pasture every "day or every other day"; that Stockman had never had a cow escape from his pasture; and that all fences enclosing the cow appeared to be adequate. In this respect the case is distinguishable from *Cooper v. Eberly*, 211 Kan. 657, upon which the Walborns rely. In view of the fact that defendant operated a recreational business which thousands visited each year and that trespassers were known to frequent the premises and to leave gates open so that his horses wandered out, the court in *Cooper* agreed that the defendant had failed to take reasonable safety precautions to prevent his horses from escaping. Unlike the *Cooper* defendant, there were no circumstances present here which would have made a reasonable person anticipate that his cow would escape.

In short, we see nothing in the circumstances of this case to establish that Stockman, in the exercise of due care, should have checked his pasture and on his cow more often than once each day or two, or, most importantly, that doing so would have prevented the occurrence of the accident.

The Walborns contended in their third negligence theory that there was no explanation for this accident other than that the fence was improperly constructed. We disagree. Kansas courts have consistently refused even to consider the application of res ipsa loquitur to the livestock trespass case. An example is *Wilson v. Rule*, 169 Kan. 296, an analogous case in which the only evidence presented was that defendant's two mules were loose and unattended on the highway when plaintiff's car collided with them. The *Wilson* court remarked:

"To [apply res ipsa loquitur] would be to hold that the fact an animal escapes from a pasture or corral or from custody while being led, ridden or driven or while hitched or tied to a hitching rack is so unusual that no other conclusion can be drawn from the occurrence itself than that the owner was negligent. Our knowledge of the ways of domestic animals forbid us doing that. We cannot assume merely because two mules were loose on the highway that the owner was negligent in the manner in which he confined them." 169 Kan. at 304.

In sum, finding no evidence to support any theory of negligence, we must reverse the trial court.

The Walborns contend, however, that even if we reverse the judgment as to negligence, we should affirm the judgment on the ground of strict liability. We disagree.

For their argument that Stockman should be strictly liable, the Walborns rely on K.S.A. 47-311, which provides:

"The owners of animals permitted or allowed to run at large in violation of *any order made in accordance with the provisions of the first section of this act* shall be liable to any person who shall suffer damages from the depredations or trespasses of such animals, *without regard to the condition of his or her fence* . . . ." (Emphasis added.)

Their reliance is mistaken.

We observe first that K.S.A. 47-311 is part of an act (K.S.A. 47-309 to -312) separate and different from the county herd law (K.S.A. 47-301 to -305). K.S.A. 47-309 provides a means for voters to petition their county commissioners to make an order that neat cattle and other livestock be prohibited from running at large; it is the *first section* of the county petition act. Thus, when K.S.A. 47-311 imposes liability on owners who permit their animals to run at large "in violation of any order made in accordance with the provisions of the first section of this act," it is referring to orders made after the commissioners have been petitioned to make such orders. K.S.A. 47-301 *et seq.*, on the other hand, delegates to county commissioners the power to unilaterally

issue an order prohibiting animals from running at large. Leavenworth is a herd law county by virtue of following K.S.A. 47-301 *et seq.* — not K.S.A. 47-309 *et seq. Lindsay v. Cobb,* 6 Kan. App. 2d at 171. Therefore, K.S.A. 47-311 as part of the county petition herd law simply has nothing to do with this case.

We observe secondly that "without regard to the condition of his or her fence" refers to the condition of the fence of the victim of the animal running at large — not the fence of the animal's owner. At the time the herd laws were adopted, Kansas had (and still has) what is known as the fence law, K.S.A. 29-301 to 29-319. The fence law was enacted by the 1854 Territorial Legislature to effectuate an open range policy. It provides in essence that the "owner of an animal which trespasses on land of another, which is protected by a legal fence, is liable for the resulting damage without proof of fault." *Lindsay v. Cobb,* 6 Kan. App. 2d 171, Syl. ¶ 1 (a fence law case arising in Leavenworth County before the herd law was adopted). The purpose of the county herd laws was thus to allow a county to opt out of the fence law by requiring owners to fence animals in rather than requiring others to fence animals out.

Therefore, the "without regard to the condition of his or her fence" language did not establish strict liability but distinguishes the herd law from the fence law; it made clear that under the herd law, one could still recover for injuries caused by animals running at large even if one did not take the precaution of fencing one's land.

As a final matter, the Walborns urge that we reverse or distinguish the Supreme Court cases which define "to run at large" as including an element of negligence. We decline their invitation. First, *Wilson v. Rule,* 169 Kan. 296, and its progeny were cases decided under K.S.A. 47-122, which is not before us. Second, as previously mentioned, judicial construction of the county herd laws requires a showing of negligence because of the words "permit" or "allow" to run at large. *E.g., Wilson v. Rule,* 169 Kan. at 301; *McAfee v. Walker,* 82 Kan. 182, 107 Pac. 637 (1910). Since K.S.A. 47-122 states only "that it shall be unlawful" for animals to run at large, the Supreme Court was faced with an argument that the legislature intended to impose strict liability by leaving out the words "permit" and "allow." The Supreme Court simply disagreed. Its construction of "to run at large" is as much a part of

K.S.A. 47-122 as if written into it originally. *Garden City Educators' Ass'n v. Vance*, 224 Kan. 732, 736, 585 P.2d 1057 (1978).

Finding no ground upon which the trial court's decision can be based, we must reverse its judgment.

Reversed.