(942 P.2d 669)
No. 76,561

CHARLES HARMON and DAWN HARMON, *Appellants*, v. DALE
KOCH and REBA KOCH, *Appellees*.

Opinion filed July 25, 1997.

*Kevin J. Carrico*, of Carrico & Strong, of Beloit, for appellants.

*Curtis A. Frasier* and *Guy R. Steier*, of Frasier & Steier, of Beloit, for appellees.

Before ROYSE, P.J., ELLIOTT, J., and J. BYRON MEEKS, District
Judge, assigned.

MEEKS, J.: Charles and Dawn Harmon appeal the trial court's
finding that Dale and Reba Koch were not negligent in the con-
tainment of their livestock and that the doctrine of res ipsa loquitur
is not applicable to cases involving escaped livestock.

In the early morning hours of December 6, 1994, Charles Harmon was driving home from his job in Beloit when he came upon six calves lined up across the road.

Charles claimed that he was driving 40 miles per hour and had very little time to react in order to avoid hitting the animals. Charles struck the calves, three of them came up onto the hood of his car and then went up and over the roof. Charles testified that, during the impact, a hoof came through the windshield and hit him in the face. After the impact, the car traveled another 50 to 100 yards and ended up off of the road in a wheat field. Charles was off work for a week after the accident and suffered a whiplash neck injury and permanent scarring on his face.

The calves were owned by Dale and Reba Koch and had broken out of a corral which was located about 7 and ½ miles from the scene of the accident.

Dale testified that on the night of the accident the corral was holding 87 calves, weighing from 500 to 700 pounds each, that had recently arrived from Kentucky. Both Dale and Reba testified that the calves appeared calm when they arrived and up to the night of the accident.

At trial, the Harmons presented the expert testimony of Ed Brokesh, an engineer who designed fencing for cattle corrals and who inspected the corral. Brokesh testified that the corral was made of continuous fencing, using fence panels made up of six, one and a quarter inch round, horizontal bars, connected to posts that were spaced from 9 to 10 feet apart. Brokesh testified that he recommended to his customers that spacing between posts be from 8 to 10 feet and that the farther the spacing, the weaker the fence.

Brokesh testified that, in addition to the opening on the west side of the fence where the calves had gotten out, he found two places where the fence had been damaged and one place where the fence panels were just held in place by clips at the top, leaving the bottom free to move. In his opinion, the cumulative effect of these problems contributed to the calves' ability to break down the fence and escape. Brokesh believed the main problem with the fence was its installation, although there were also some apparent maintenance problems.

There was evidence at trial that the Kochs had cattle get out of other corrals in the past and wander into the road. Dale Koch admitted that cattle had escaped in the past from other pens he owned. Dale claimed that the only explanation he had as to why the calves had broken out of the corral was that something had frightened or spooked them, causing them to hit the west side of the fence and break down a post.

Brokesh testified that a corral which was going to be holding animals which were likely to be spooked ought to be made a little bit stronger than the pen which was holding the calves that escaped. However, Brokesh also stated that he did not believe that a corral could be built that would totally prevent spooked animals from escaping.

The Kochs produced the expert testimony of George Eakin, an engineer who manufactured livestock equipment. Eakin testified that the Kochs' corral had been sufficiently strong for its purpose. In addition, Eakin testified that from what he knew of the situation, it was his opinion that the calves had been spooked by something. Eakin testified that this was evidenced, in part, by the distance the calves had gone after breaking out of the corral.

Eakin testified that he found concrete around the base of the fence posts of the corral when he dug 8 inches down on the outside of the fence posts. Apparently, the concrete had been placed to the outside of the corral. However, Eakin testified that even one calf, weighing approximately 570 pounds, could have broken the fence post in question if it had been moving fast enough and had hit the post at the right place.

The trial court determined that the Kochs had exercised due care in containment of the calves and were, therefore, not negligent. In addition, the trial court found that even if the Kochs had been negligent, such negligence was not the proximate cause of the accident. Rather, it was the spooking of the cattle which proximately caused the Harmons' damages. Finally, the trial court determined that the doctrine of res ipsa loquitur was not applicable to a livestock escape case.

In *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993), the court stated:

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citations omitted.]"

An appellate court's standard of review with respect to whether substantial competent evidence exists to support a trial court's finding is narrow. In *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 361-62, 837 P.2d 330 (1992), the court stated:

"When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal. [Citation omitted.]"

The Harmons argue that the trial court erred in finding that the Kochs were not negligent in the installation and maintenance of the fence which held the calves. The Harmons do not otherwise argue that the trial court erred in finding that the calves became spooked, or otherwise dispute that the spooking of the cattle was the proximate cause of the Harmons' damages.

Evidence was produced at trial which supported the trial court's conclusion. In fact, even Brokesh, the expert for the Harmons, testified that although the fence had some problems, it was comparable to the kind of fencing used by other livestock producers and that even though using shorter spacing between the fence posts would have reduced the likelihood of escape, it would not have prevented it completely. In addition, the evidence showed that although cattle had gotten out of other corrals owned by the Kochs, the only other time a calf had escaped from the corral in question was once when someone had left a gate open.

For these reasons, it appears that the trial court's conclusion that the Kochs had exercised due care in the containment of the calves was supported by substantial competent evidence and should be upheld.

Next the Harmons ask this court to extend the application of the doctrine of res ipsa loquitur to include livestock cases. The trial court found that the doctrine was not applicable to such cases, citing *Walborn v. Stockman*, 10 Kan. App. 2d 597, 706 P.2d 465 (1985). This court's review of conclusions of law is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

In *Walborn*, this court stated:

"Kansas courts have consistently refused even to consider the application of res ipsa loquitur to the livestock trespass case. An example is *Wilson v. Rule*, 169 Kan. 296 [, 219 P.2d 690 (1950)], an analogous case in which the only evidence presented was that defendant's two mules were loose and unattended on the highway when plaintiff's car collided with them. The *Wilson* court remarked:

'To [apply res ipsa loquitur] would be to hold that the fact an animal escapes from a pasture or corral or from custody while being led, ridden or driven or while hitched or tied to a hitching rack is so unusual that no other conclusion can be drawn from the occurrence itself than that the owner was negligent. Our knowledge of the ways of domestic animals forbid us doing that. We cannot assume merely because two mules were loose on the highway that the owner was negligent in the manner in which he confined them.' 169 Kan. at 304." 10 Kan. App. 2d at 601.

Accordingly, the trial court was correct in refusing to apply the doctrine of res ipsa loquitur to livestock escape cases.

Finally, even if this court were to accept the Harmons' invitation to reconsider such application, the doctrine would not, in any event, apply in the present case. In order to apply the doctrine, it is necessary for the plaintiff to show: (1) that the defendant had exclusive control of the thing or instrumentality causing the injury or damage; (2) that the nature of the injury or damage was such that it ordinarily does not occur in the absence of someone's negligence; and (3) that the plaintiff was not contributorily negligent. *Martin v. Board of Johnson County Comm'rs*, 18 Kan. App. 2d 149, 160, 848 P.2d 1000 (1993). The requirement that the plaintiff not be contributorily negligent must be modified today to incorporate the relevant comparative negligence principles. *Arnold Associates, Inc. v. City of Wichita*, 5 Kan. App. 2d 301, 309, 615 P.2d 814 (1980), *rev. denied* 229 Kan. 669 (1981).

The particular facts of this case demonstrate that both the calves and the corral were under exclusive control of the Kochs and that

Charles Harmon was not in any way at fault in causing the accident which occurred. However, with respect to the second element above, evidence was produced at trial which tended to show that the accident may have been caused, not necessarily by the Kochs' alleged negligent installation and maintenance of the corral holding the calves, but by an unforseen occurrence which resulted in the cattle becoming spooked. Consequently, sufficient evidence was produced at trial to suggest that the nature of the injury or damage which occurred was not the kind which ordinarily occurs as the result of someone's negligence. Thus, the doctrine of res ipsa loquitur was not applicable under the particular facts of this case.

Affirmed.