(263 P.3d 188)
Nos. 105,020
105,021

WILLIAM JEWETT, *Appellant*, v. MICHAEL MILLER, *Appellee*, and
ANTWON CAFFEY, *Appellant*, v. MICHAEL MILLER, *Appellee*.

Opinion filed August 26, 2011.

*John G. O'Connor*, of Robb, Taylor & O'Connor, of Kansas City, for appellant William Jewett.

*Roger W. McLean*, of Kansas City, for appellant Antwon Caffey.

*Blake Hudson*, of Hudson & Mullies, L.L.C., of Fort Scott, for appellee.

Before GREEN, P.J., MARQUARDT, J., and BUKATY, S.J.

GREEN, P.J.: William Jewett and Antwon Caffey were injured when the car they were occupying struck a horse that had escaped from Michael Miller's farm. Jewett and Caffey brought suit against Miller, alleging that he had negligently failed to inspect and maintain his fence, which had allowed the horse to escape. The trial court granted summary judgment in favor of Miller. On appeal, Jewett and Caffey contend that the trial court improperly granted summary judgment in favor of Miller. We disagree. Accordingly, we affirm the judgment of the trial court.

On June 17, 2004, Jewett was a passenger in a car heading north on Highway K-7 in Linn County. While Antwon Caffey was driving, he struck a horse owned by Miller. The horse had escaped from its enclosure and was on the highway when it collided with the car.

The only evidence concerning Miller's efforts to maintain his fence comes from Miller's deposition. When the accident occurred, Miller owned a 352-acre farm off Highway K-7 in Linn County. Miller kept two horses and approximately 42 head of cattle, which he rotated between various enclosures on his farm. The two horses escaped from enclosure 4, which abuts the highway. The fence on enclosure 4 facing the highway was built in 1999 and is made of four sections of barbed wire strung between steel T-posts and wooden fence posts. In addition, Miller had installed an electric fence inside the section of enclosure 4 that faces the highway.

About a year or two before the accident, a contractor working for the local water board installed a pipeline through Miller's property. The contractor bulldozed a swath of trees and created a trench, which changed the direction of the water flow on Miller's land. Miller did not notice the change in the water flow until about 2 months before the accident, when he saw that water runoff had eroded the dirt under two of the T-posts on fence enclosure 4, causing them to pop up from the ground. When Miller saw that the two T-posts were loose, he drove them into the ground as far as he could and then set them in concrete. With the exception of the two loose T-posts, all the other fence posts were secure.

On the night of the accident, Miller arrived home from work and saw his bull and one of his cows in his backyard. As Miller was putting the animals back in their enclosure, he saw his two horses

running across the field headed for the highway. Miller secured his cattle and was chasing after his two horses when he heard the accident. Caffey saw one of the horses running across the highway but did not have time to react before he struck it. Jewett has no recollection of the accident because he was asleep when it happened and awoke in a hospital days later.

After the accident, Miller inspected the fence and found that there was a hole in the fence on the northwest side of enclosure 4 near the highway, about 42 to 56 feet from the spot where he had repaired the two T-posts 2 months earlier. Miller testified that the fence was breached in a low lying drainage area and was caused by soil erosion. Miller attributed the soil erosion to the excessive rainfall that occurred on the day of the accident and to the change in the water drainage caused by the pipeline. The soil had eroded under two fence posts in a culvert receiving large amounts of water runoff, causing the fence posts to pop out of the ground. Miller testified that it seemed his bull had gotten his head under the washed out section of fence and damaged the fence. This created a hole in the fence, which allowed the horses to escape. Miller believed the electric fence stopped working when the fence got washed out. Miller testified that if an electric fence loses tension, it will come in contact with the barbed wire, causing the electric fence to short out.

When Miller learned of the breach in the fence, he temporarily repaired the hole in the fence the night of the accident. Moreover, the next week he permanently repaired the hole by securing eight or nine new T-posts with heavy baskets of rocks. (The rocks are used to weigh down the fence posts when the soil is inadequate to hold the posts in the ground.)

Miller testified that the damage to his fence must have occurred that day because he checked the fence a day or two before the accident happened and saw no problems. Miller made it a habit to check the fence along the highway every 2 days by driving along the perimeter in a four-wheel, all-terrain vehicle. Miller testified that a visual inspection was all that was necessary to know if the fence was in good condition. Finally, Miller testified that his horses

had never escaped from their enclosures before the night of the accident.

Jewett and Caffey jointly sued Miller, alleging the horses had escaped because of Miller's negligent failure to inspect and repair his fence. Later, Jewett and Caffey filed separate actions against Miller.

At the close of discovery, Miller moved for summary judgment against Jewett and Caffey. The trial court granted Miller's motion, finding that Jewett and Caffey had failed to present any evidence showing Miller had failed to exercise due care in maintaining his fence or in keeping his livestock confined. Jewett and Caffey both filed notices of appeal. Jewett's and Caffey's cases were consolidated for this appeal.

*Did the Trial Court Err in Granting Summary Judgment in Favor of Miller?*

Jewett and Caffey have only one argument on appeal. They contend that the trial court erred in granting summary judgment in favor of Miller because a reasonable factfinder could have concluded that the accident was caused by Miller's negligent failure to adequately inspect and maintain his fence.

Our standard of review for a motion for summary judgment is firmly established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. . . . On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

Summary judgment should be granted with caution in negligence actions. *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008). Nevertheless, summary judgment is proper in a negligence action if the defendant shows there is no evidence indicating negligence. *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 904, 166 P.3d 1047 (2007). Summary judgment is also proper

in a negligence action if the only questions presented are questions of law. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

The essential elements of negligence are as follows: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that legal duty; (3) the breach of that legal duty was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585-86, 214 P.3d 1173 (2009).

Here, for Jewett and Caffey to prevail on their claim, they must show that under all the facts and circumstances, Miller breached his duty by failing to exercise due care in keeping his horses enclosed. See *Walborn v. Stockman*, 10 Kan. App. 2d 597, 599, 706 P.2d 465 (1985). To prevail in his summary judgment motion, Miller is not obligated to show a lack of negligence on his behalf. See *Sharples v. Roberts*, 249 Kan. 286, 292, 816 P.2d 390 (1991). Whether Miller breached his duty of care is a question of fact, and, as such, we must examine the evidence and the inferences that can be drawn from them in the light most favorable to Jewett and Caffey since they are the parties opposing the motion for summary judgment. See *Marshall v. Heartland Park Topeka*, 274 Kan. 294, 298, 49 P.3d 501 (2002). Nonetheless, Jewett and Caffey must present some evidence to preclude summary judgment. In Kansas, the doctrine of res ipsa loquitur does not apply in livestock escape cases. Farmers are not automatically liable just because one of their animals has escaped from a fenced pasture. *Harmon v. Koch*, 24 Kan. App. 2d 149, 153, 942 P.2d 669 (1997); *Walborn*, 10 Kan. App. 2d at 601-02.

Thus, under Kansas law, Jewett and Caffey must show that one of Miller's horses was unattended and on the highway because Miller failed to exercise due care in keeping the horse confined. In other words, they must point to some evidence of a disputed material fact regarding Miller's failure to exercise due care in maintaining and inspecting his fence.

Jewett and Caffey contend that Miller breached his duty to exercise due care in keeping his horses confined when he failed to physically inspect his fence posts after becoming aware of the ero-

sion problem. This argument is flawed. Under their argument, Jewett and Caffey are tacitly assuming that Miller's failure to physically inspect his fencing after becoming aware of the erosion problem breached his duty to exercise due care in keeping his horses confined. Nevertheless, their evidence falls far short of establishing this contention.

First, Jewett and Caffey cite no authority that required Miller to make a physical inspection of the fence posts. To the contrary, in *Walborn* this court seemed to hold that a visual inspection of the fencing would be adequate. In that case, the evidence showed that the defendant or his brother visited the pasture "every 'day or every other day'," that the defendant had never had a cow escape from his pasture, and that the fences enclosing the cow *appeared* to be adequate. 10 Kan. App. 2d at 600. Indeed, the material facts in this case are very similar to the facts in *Walborn*, where the defendant was found not to be liable for an escaped cow.

Turning our attention to Miller's use of a visual inspection of his fence, we note that Miller testified that a visual inspection alone was sufficient to detect problems with the fence. Jewett and Caffey attack Miller's credibility on this point without presenting any evidence to support their assertion. An unsupported challenge to a witness' credibility is insufficient to create a genuine issue of material fact. *Estate of Pemberton v. John's Sports Center, Inc.*, 35 Kan. App. 2d 809, 835-36, 135 P.3d 174 (2006).

Second, to argue, as Jewett and Caffey do, that because the fence had eroded in one area it would erode in another area is to generalize from too few instances of an erosion problem. Moreover, the facts show that when Miller saw an erosion problem in a particular spot on the fence, he took the necessary steps to correct the problem. For example, when Miller saw that the two T-posts were loose, he acted to correct the problem by setting them in concrete. With the exception of the two loose T-posts, Miller testified that all the other fence posts were secure. This was direct testimony that the fence was in good condition before the accident or injury occurred. As a result, no circumstances existed that would have made a reasonable person anticipate that Miller's horses would escape. See *Walborn*, 10 Kan. App. 2d at 600 ("In short, we see

nothing in the circumstances of this case to establish that Stockman, in the exercise of due care, should have checked his pasture and on his cow more often than once each day or two, or, *most importantly, that doing so would have prevented the occurrence of the accident.*" [Emphasis added.]).

Next, Jewett and Caffey contend that Miller's testimony that he visually inspected the fence every 2 to 3 days is inconsistent with his testimony that he saw nothing wrong with the fence in the area where it eventually eroded and the horses escaped. They insist that "a reasonable mind" could conclude that Miller "did not perform adequate inspections" or that Miller did not testify "truthfully" when he stated that he regularly performed fence inspections after repairing the two loose T-posts. Jewett and Caffey's argument, however, literally begs the question, assuming the very point which had to be proved.

Indeed, Jewett and Caffey's argument presupposes what it endeavors to prove, namely, that Miller did not adequately inspect the fence as he testified he did or that Miller lied when he stated that he regularly performed fence inspections after earlier repairing the two loose T-posts. That is something, of course, that Jewett and Caffey had to prove. Nevertheless, they have offered no discernable evidence on either of these two points. Instead, Jewett and Caffey's offer of proof involves an attack on Miller's credibility. As stated earlier, this is insufficient. See *Estate of Pemberton*, 35 Kan. App. 2d at 835-36 (An unsupported challenge to a witness' credibility is insufficient to create a genuine issue of material fact.).

Furthermore, Jewett and Caffey argue that had Miller made regular physical inspections of the fence, he would have "detected" the erosion problem and remedied it before the accident or injury occurred. Consequently, Jewett and Caffey seem to argue that "the presumption of inference of negligence" under the doctrine of res ipsa loquitur is applicable to this case. See *Rhodes v. Dehaan*, 184 Kan. 473, 475, 337 P.2d 1043 (1959). Nevertheless, as stated earlier, the doctrine of res ipsa loquitur is inapplicable to livestock escape cases. *Harmon*, 24 Kan. App. 2d at 153.

Because the evidentiary presumption of negligence under the doctrine of res ipsa loquitur is unavailable to them to establish a

breach of duty, Jewett and Caffey must point to some facts or evidence on which their proposition, that Miller breached his duty, may be logically based. A jury may not be permitted to reach its verdict on the basis of speculation or conjecture. See *Duncan v. Railway Co.*, 86 Kan. 112, 123, 119 P. 356 (1911) ("While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown and not from those imagined or inferred that such inference could rightfully be drawn."). Yet, Jewett and Caffey rely on speculation and conjecture as support for the proposition which they want to establish.

For example, Jewett and Caffey point to no facts or evidence that would show that Miller breached his duty of care by failing to make regular physical inspections of the fence. Jewett and Caffey, simply surmise that Miller breached his duty of care when they assert that he failed to regularly physically inspect the fence. But the facts are contrary to their proposition. To illustrate, Miller testified that he checked the fence along the highway every 2 days by driving along the perimeter in a four-wheel, all-terrain vehicle. Miller further testified that a visual inspection was all that was necessary to know if the fence was in good condition. Finally, Miller testified that the damage to his fence must have occurred the day of the accident because he had checked the fence a day or two before the accident happened and saw no problems. As we stated earlier, a mere escape of Miller's horses from their enclosure without fault of Miller would not have rendered him liable.

Except for speculation and conjecture, Jewett and Caffey point to no facts or evidence of a disputed material fact regarding Miller's alleged failure to exercise due care in maintaining and inspecting his fence. Although reasonable inferences may be drawn from the facts and conditions shown, they cannot be drawn from facts or conditions merely imagined or assumed. *Duncan*, 86 Kan. 112, Syl. ¶ 5. Consequently, Jewett and Caffey have failed to connect the facts in such a way that they converge on the proposition which they want to establish: that Miller breached his duty by failing to exercise due care in keeping his horses confined. See *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 689, 549 P.2d 1026 (1976) (In law,

permissible presumptions or inferences "must have substantial probative force as distinguished from surmise."). Because the evidence indicates that Miller properly maintained the section of the fence in question, no liability attached to him.

Finally, Jewett and Caffey contend that the extensive repairs Miller made to the fence after the accident show that Miller was negligent for failing to make those modifications to the fence before the accident. They argue that if Miller had taken those steps before the accident, the fence would not have been eroded by the water. Nevertheless, the evidence of Miller's repairs to the fence was inadmissible to prove negligence:

"When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." K.S.A. 60-451.

Nevertheless, Jewett and Caffey maintain that the measures were admissible to show the condition of the place or thing when the accident occurred or the feasibility of the methods which could have been used to anchor the fence. This point, while true, is irrelevant. There is no material question of fact regarding the condition of the fence before the accident—Miller testified that it was in good condition 1 or 2 days before the accident. The feasibility of additional methods to secure the fence was also not at issue in this case.

As a result, only one question was required to be determined: whether Miller was negligent in maintaining and inspecting the fence. Jewett and Caffey would like to point to the remedial measures Miller took after the accident as evidence that Miller was negligent in not taking those steps before the accident. Nevertheless, as the trial court correctly held, they cannot do this under K.S.A. 60-451.

In summary, the evidence showed that Miller enclosed his horses in a barbed wire and electric fence. He inspected the fences regularly, repaired them as necessary, and had never before had a problem with his animals escaping their enclosures. Jewett and Caffey essentially want this court to apply the doctrine of res ipsa

loquitur and conclude that Miller must be liable because his horses got out of their enclosure. But Kansas law requires them to show some evidence that Miller was negligent. Because they have failed to meet this burden, the trial court properly granted summary judgment in favor of Miller.

Affirmed.