## A97A2049. BANKS v. THE STATE.
(493 SE2d 923)

POPE, Presiding Judge.

Ladds Taylor Banks appeals his bench trial conviction for misdemeanor possession of marijuana. He claims that the Gwinnett County State Court lacked jurisdiction over the crime charged and that the court erred in denying his motion to suppress the marijuana seized during a late-night "security check" of his business. We conclude that the state court had jurisdiction, and that officers conducting routine, nighttime investigations of businesses on their patrol may enter an unlocked commercial premises to check for intruders. Accordingly, we affirm the conviction.

1. In his first enumeration, Banks argues that he was actually charged with a felony, over which the state court had no jurisdiction. See generally OCGA § 15-7-4. Without considering the effect of Banks' failure to raise this issue before trial, we find his argument meritless. Banks correctly asserts that OCGA § 16-13-30 (j) makes possession of marijuana a felony unless the conditions of OCGA § 16-13-2 (b) apply. As enacted at the time of Banks' offense and conviction, § 16-13-2 (b) made possession of less than one ounce of marijuana a misdemeanor where the defendant "would have qualified for the conditional discharge provided for in [OCGA § 16-13-2 (a)] but for the fact that the judge chose not to avail himself of the authority granted by this Code section or that the person violated the conditions imposed by the court. . . ."[1] The amended accusation states, and the record shows, that Banks had never been convicted of any drug offense; therefore, he "would have qualified" for conditional discharge under OCGA § 16-13-2 (a). We find nothing in the statute which confers misdemeanor status on first offenders only where the court has actually *considered and denied* the defendant conditional discharge. Although the record does not reflect whether the court considered and rejected conditional discharge, the court clearly "did not avail" itself of this authority. Consequently, Banks' reliance on *Williams v. State*, 222 Ga. App. 698 (475 SE2d 667) (1996) and *Kent v. State*, 129 Ga. App. 71 (198 SE2d 712) (1973) is misplaced, and this enumeration is without merit.

2. In reviewing the trial court's denial of Banks' motion to suppress the marijuana, we construe the evidence in favor of the court's findings and judgment and uphold its findings unless clearly erroneous. See *Beck v. State*, 216 Ga. App. 532, 534 (1) (455 SE2d 110) (1995). The record shows that on Christmas night 1995, a Duluth police officer began his routine patrol, aware that two businesses on

---

[1] The statute was amended, effective April 29, 1997, to provide that possession of less than one ounce of marijuana is always a misdemeanor.

his beat had been burglarized the night before. Around 11:55 p.m., the officer drove through an area of warehouses and other commercial operations that included, in Suite 105-A, Banks' computer consulting business. Although he was apparently not familiar with Banks' working hours or the nature of his business, the officer had patrolled this area for several months and was surprised to see a light burning in Suite 105-A and two unfamiliar cars parked nearby. He checked the door of Suite 105-A and, finding it closed but unlocked, decided to investigate and called for a backup unit. When assistance arrived, the two officers, without knocking or announcing their presence, opened the unlocked door and smelled burning marijuana. Walking down a hallway, they encountered Banks, who told them he owned the business. Unsure of Banks' identity, the officers proceeded with him into a back room filled with marijuana smoke, where they found four other people and saw a marijuana pipe. When one of the officers asked Banks if he had any more marijuana, Banks reached into his front pocket and produced a small bag.

Banks argues that before officers opened the door of his business, they had no warrant and knew of no exigent circumstances which would allow a warrantless entry. We agree that if the State were required to show the "exigent circumstances" which will justify the warrantless intrusion into one's residence, its efforts to justify this search would fail. See generally *Carranza v. State*, 266 Ga. 263, 266-267 (467 SE2d 315) (1996). The State argues, however, that police officers making routine, nighttime patrols of apparently closed businesses may enter a business they find unlocked to ensure no intruders are on the premises. Although no Georgia case directly addresses this warrant exception, we agree that such a limited exception is consistent with the Fourth Amendment.

As the Supreme Court of Georgia has held, " 'The Warrant clause of the Fourth Amendment protects commercial buildings as well as private homes.' [Cit.]" *Yingsum Au v. State*, 258 Ga. 419, 420 (369 SE2d 905) (1988). In *Yingsum*, the court struck down as unconstitutional a Marietta ordinance which gave officers broad, discretionary authority to make warrantless searches of city businesses. Nothing in *Yingsum*, however, addresses the specific issue at hand. Although *Carranza* requires that a warrantless search of a *residence* be justified by exigent circumstances, we do not find that holding extends to *commercial* premises. As one federal appeals court has stated, "[I]t may be said as a general rule that there is a lesser expectation of privacy in commercial as contrasted with residential buildings. [Cit.]" *United States v. Bute*, 43 F3d 531, 536 (10th Cir. 1994).

A number of courts have squarely addressed the propriety of a warrantless "security check" search. In *Alaska v. Myers*, 601 P2d 239 (Alaska 1979), officers patrolling a commercial area late at night

found the back door of a closed theater propped open. Suspecting unauthorized intruders, the officers entered the theater, walked behind the stage, and found the manager and others sitting on the floor with drug devices. Id. at 241. The court noted that had the theater been a home, the officers' intrusion would have been improper. "With respect to a business, however, when the doors close, the owner has gone home, and night falls, the owner's interest is normally not the protection of private conduct; at such a time, when the property is most vulnerable to burglary, the security of the premises ordinarily becomes the paramount interest. It is only reasonable to assume that the vast majority of proprietors . . . subjectively expect and encourage the police to be vigilant in protecting business premises, and are aware that, when a normally deserted and locked building is discovered by the police to be unsecured, such vigilance may require trespasses that would not be tolerated in one's home." Id. at 243. Because business proprietors possessed this "diminished expectation of privacy," the court found such warrantless entries of businesses proper. Id. The court held that when police conduct a "routine, after-hours security check undertaken to protect the interests of the property owner" and find an unlocked door, and "there is no reason to believe that the owner would not consent to . . . entry," officers may conduct a brief search which is "limited and necessary to the purpose of ensuring that no intruders are present on the premises." Id. at 244. Furthermore, the court held police must quickly inform those responsible for the building of the "protective measures taken." Id.

Other courts have fashioned similar rules. In *Illinois v. Gardner*, 459 NE2d 676, 680-681 (Ill. App. 1984), the court found the "security check" exception allowed officers on routine patrol to enter a closed but unlocked auto repair shop. In *People v. Parra*, 106 Cal. Rptr. 531, 534 (Cal. App. 1973), the court held officers without a warrant were justified in entering an empty flower shop after business hours when the door was standing ajar. And in a case very similar to this one, a Florida appeals court authorized the warrantless search of a business at 3:30 a.m. where officers saw a light burning in a rear window and found the door of the building closed but unlocked. *Florida v. Bell*, 249 S2d 748 (Fla. App. 1971). The *Bell* case notes that officers patrolling commercial areas at night routinely check to ensure businesses are locked and secure. Id. at 751.

Finding this authority persuasive, we hold that officers who find an apparently closed business unlocked during a normal security sweep may conduct a limited intrusion on the business premises for the sole purpose of securing the area and ensuring no intruders are present. See *Myers*, 601 P2d at 244. At the same time, however, we acknowledge the concerns expressed by the federal court of appeals in *Bute*, 43 F3d at 537, which rejected a "wholesale exception"

because it "makes no accommodation for the particular nature and circumstances surrounding individual buildings." Rather than create a wholesale license for officers to enter unlocked commercial premises after business hours, we hold that such an intrusion will be proper only when it is justified by an officer's reasonable belief that (1) the building's owner or rightful occupants would not object to the intrusion, and (2) circumstances are sufficient to give the officer an "articulable suspicion" that unauthorized persons are presently on the premises. See *Myers*, 601 P2d at 244; *Alex v. State*, 220 Ga. App. 754, 756 (2) (470 SE2d 305) (1996) (defining "articulable suspicion").

Applying this rule to the facts at hand, we find the trial court properly denied the motion to suppress. The unusual circumstances, including the unlocked door, the recent burglaries, the light in the window near midnight, and the presence of unfamiliar cars, allowed the officers to enter the building to check for intruders. And once they entered the building, smelled and saw the marijuana smoke "billowing" through the building, and were seen by Banks, Banks' awareness of their presence created exigent circumstances further allowing the warrantless search, as the officers were entitled to prevent the probable destruction of the marijuana. See *Evans v. State of Ga.*, 214 Ga. App. 844, 845 (1) (449 SE2d 302) (1994). When the officers reached the back room and saw the marijuana smoking device in plain view, they had probable cause to seize the device and search for additional contraband. See *Pickens v. State*, 225 Ga. App. 792, 795 (1) (b) (484 SE2d 731) (1997).

*Judgment affirmed. Johnson, J., concurs. Blackburn, J., concurs fully in Division 2 and concurs in judgment only in Division 1.*

DECIDED NOVEMBER 17, 1997.

*Clark & Towne, David E. Clark, Bridgette E. Dawson*, for appellant.

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, William F. Bryant, Assistant Solicitors*, for appellee.

