## A99A1095. THE STATE v. SIMS.
### (523 SE2d 619)

SMITH, Judge.

Travis K. Sims was indicted on one count of criminal damage to property in the second degree, OCGA § 16-7-23 (a), for damaging the grounds of Pickens County High School with a "four-wheeler" off-road vehicle. The trial court granted Sims's motion to suppress his noncustodial statement, and the State appeals pursuant to OCGA § 5-7-1 (a) (4). We agree with the trial court that the police officers unlawfully entered Sims's residence without probable cause or exigent circumstances, and therefore we affirm.

> When reviewing a ruling on a suppression motion, the evidence must be construed most favorably toward the trial court's findings and judgment unless they are clearly erroneous. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.

(Citations and punctuation omitted.) *Gidden v. State*, 234 Ga. App. 268 (506 SE2d 448) (1998). The record reveals that a Pickens County deputy investigated a complaint that two people had been riding a "four-wheeler" on the ball field and embankments at Pickens County High School. The complainant described the four-wheeler but was unable to give any specific identifying marks. The officer drove around the area to see if he "could find anyone riding a four wheeler or any tracks that may have led in or out of the area." About a mile from the high school, the officer saw a four-wheeler in Sims's driveway.

The officer and his partner approached the home, which counsel stated was in a wooded area about 120 feet from the public roadway.

They heard "some kind of noise" like a radio inside the house and saw cars in the open garage, but no one came to the door when they knocked at the front door, the back door, or the garage door. They walked around the side of the house and found an open garage door leading into the basement.

After advising their dispatcher that they were entering the house "to insure that there was no criminal activity," the officers entered the basement and "cleared" it without finding anyone there. They then climbed the staircase leading from the basement to the first floor of the home, opened a closed but unlocked door, and entered the residence. While "clearing" the first floor, they announced their presence and heard a reply from upstairs. Sims came downstairs in response to the officers' call and made the statements which are the subject of the motion to suppress. At least one officer had his gun drawn when they called Sims downstairs.

The principles governing this police-citizen encounter are well established. "[E]ven where probable cause exists, warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances. [Cit.]" *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996). A citizen's home is an "unquestionable zone of privacy under the Fourth Amendment," and when a residence is involved "[n]o amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." (Citations and punctuation omitted.) *Bunn v. State*, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). If officers are not responding to an emergency, there must be " 'compelling reasons' " and " 'exceptional circumstances' " to justify a warrantless search. Id.

The Fourth Amendment requires that a "neutral judicial officer . . . assess whether the police have probable cause to make an arrest or conduct a search." *Carranza*, supra at 265.

> [A]bsent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.

(Citation omitted.) *Carranza*, supra at 265.

The State relies solely on the Supreme Court of Georgia's decision in *Gilreath v. State*, 247 Ga. 814 (279 SE2d 650) (1981), to support its contention that this police entry was lawful. But *Gilreath* is

inapposite here. In that capital murder case, the exigent circumstances authorizing an entry by the police were clearly outlined. The police received a call for help from a citizen who reported violent threats to his stepdaughter by her estranged husband and the fact that she had not kept an appointment with him for that afternoon. Id. The police properly approached the stepdaughter's residence in response to that call, knocked on the front door without receiving an answer, and went to a side door leading to a screened porch. While still outside the door, they not only observed two more doors left ajar but also heard music playing and smelled a strong odor of gasoline that "permeated the area." Id. at 815. When they entered the screened porch, they saw the body of one of the murder victims lying inside a glass door leading to the living area of the house. Id.

The Supreme Court of Georgia held that the police were authorized to go to the home, enter the curtilage, and knock on the outer doors in response to the request of a relative who stated his reasons for fearing harm to the occupant. The entry into the home, regardless of whether the threshold of the home was the porch door or the glass door, was proper because it "was preceded by an awareness of exigent circumstances": the heavy odor of gasoline and the absence of any response to their knocking despite the sound of music playing. Gilreath, supra at 821.

In this case, in contrast, no exigent circumstances whatever appear from the record. The police were investigating an already completed crime. They were not responding to a call or complaint, but simply looking for any "four-wheeler" without any more particular description. They walked around Sims's house and found nothing suspicious even after entering the basement, walking upstairs, and entering the living area through a closed door. Only then did they hear someone answer their call and, with drawn gun, order Sims to come down from upstairs.

At the hearing, counsel for the State insisted that the sheriff's department policy was to secure any residence with an open door to ensure that a burglary was not in progress. We doubt, as did the trial court, that this is an accurate description of the sheriff's official policy. But such a policy, if it exists, violates the Fourth Amendment. Our decision in Banks v. State, 229 Ga. App. 414 (493 SE2d 923) (1997), overruled on other grounds, Calbreath v. State, 235 Ga. App. 638, 640, n. 3 (510 SE2d 145) (1998), acknowledges that Carranza requires warrantless searches of residences to be justified by exigent circumstances and carefully limits its holding to commercial rather than residential property. In Banks, we held that the "lesser expectation of privacy" in commercial buildings, Banks, supra at 415, allowed police officers on routine nighttime patrol to enter an unlocked business after hours to check for intruders. This rule does

not apply to a daytime incursion into Sims's private residence. A garage or basement door left open to admit light and air does not constitute a blanket invitation to the police to enter and certainly not to continue their entry through closed doors into the residence itself after finding nothing amiss.

The police entry into Sims's residence without probable cause or exigent circumstances was a clear violation of the Fourth Amendment. Moreover, the connection between this unconstitutional police conduct and Sims's statement was not " 'sufficiently attenuated to permit the use at trial of the statement. [Cits.]' " *State v. Harris*, 256 Ga. 24, 26 (2) (343 SE2d 483) (1986). Applying the factors outlined in *Harris*, we find that the temporal proximity between the conduct and Sims's statement "and, particularly, the purpose and flagrancy of the official misconduct," show that no such attenuation occurred. (Punctuation omitted.) Id. For these reasons, the trial court correctly granted Sims's motion to suppress.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 18, 1999.

*Roger G. Queen, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellant.

*Edwin Marger*, for appellee.