(32 P.3d 199)
No. 85,491

STATE OF KANSAS, *Appellee*, v. DAVID G. BAUGHMAN, *Appellant*.

Opinion filed September 21, 2001.

*Kevin Loeffler*, of Wichita, for appellant.

*Donna L. Longsworth*, assistant county attorney, *Matt Treaster*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., PIERRON, J., and BUCHELE, S.J.

BEIER, J.: This case requires us to decide whether law enforcement officers' warrantless entry into a commercial building at night, when a door had been left ajar and a light left on inside, violated the business owner's Fourth Amendment right to be free of unreasonable searches and seizures.

Defendant-appellant David G. Baughman seeks reversal of his drug convictions, contending the district court erred in denying his motion to suppress evidence found in the building housing his business. Law enforcement officers discovered marijuana growing inside Baughman's business when they entered the building about 3:30 a.m., prompted by an open exterior door and a light inside. Suspecting a burglary in progress, the officers did not attempt to contact Baughman before entering the building, although at least one of them was aware the business was his. The building was located in Walton, Kansas.

One of the deputies testified that standard safety procedure dictated they should search a commercial building found in circumstances such as the one in this case before calling the business owner. Indeed, at oral argument, the State took the position that law enforcement officers should be permitted to enter a commercial building under these circumstances, even if an owner had been contacted and refused to give consent, because the officers are responsible for protecting the owner regardless of whether he or she declines to be protected.

After the officers observed a grow light and plants appearing to be marijuana in the building, they obtained a search warrant and seized numerous marijuana plants and growing equipment from the building. A detective testified that defendant waived his *Miranda* rights and admitted to growing the marijuana for his personal use.

Baughman moved to suppress the evidence and his statements. The district court denied the motion, relying primarily upon *Banks v. State*, 229 Ga. App. 414, 493 S.E.2d 923 (1997), *overruled on*

*other grounds Calbreath v. State*, 235 Ga. App. 638, 640 n.3, 510 S.E.2d 145 (1998). *Banks* recognized a "security check" exception to the warrant requirement in specific circumstances. The Tenth Circuit had rejected a broad security check exception in favor of a more flexible approach in *United States v. Bute*, 43 F..3d 531 (10th Cir. 1994).

When, as here, the facts material to a motion to suppress evidence are not in dispute, the question of whether to suppress is one of law subject to unlimited review by the appellate court. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and a warrantless search is per se unreasonable unless it falls within a recognized exception. *State v. Canaan*, 265 Kan. 835, 840, 964 P.2d 681 (1998) (citing *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 [1967]).

Kansas has previously recognized several exceptions to the Fourth Amendment search warrant requirement: consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances, of which hot pursuit is one example; the emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses. See *Canaan*, 265 Kan. at 843 (inventory search of impounded automobile; plain view); *State v. Box*, 28 Kan. App. 2d 401, 404, 17 P.3d 386 (2000) (citing *State v. Sanders*, 5 Kan. App. 2d 189, 195, 614 P.2d 998 [1980]) (consent, search incident to arrest, stop and frisk, exigent circumstances, hot pursuit); *State v. Jones*, 24 Kan. App. 2d 405, 410-12, 947 P.2d 1030 (1997) (emergency doctrine recognized in *State v. Jones*, 2 Kan. App. 2d 38, 573 P.2d 1134 [1978]); *State v. Marsh*, 16 Kan. App. 2d 377, 381-87, 823 P.2d 823 (1991) (citing as controlling *New York v. Burger*, 482 U.S. 691, 702-03, 711-12, 96 L. Ed. 2d 601, 107 S. Ct. 2636 [1987]); see also *Steagald v. United States*, 451 U.S. 204, 218, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981) (recognizing hot pursuit exception as one example of exigent circumstances exception); *State v. Riddle*, 246 Kan. 277, 280, 788 P.2d 266 (1990) (same).

Although our appellate courts also frequently refer generally to "reasonableness" as the guiding principle of Fourth Amendment analysis, see, *e.g.*, *In re L.A.*, 270 Kan. 879, 21 P.3d 952 (2001) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 83 L. Ed. 2d 720, 105 S. Ct. 733 [1985]); *State v. Jones*, 27 Kan. App. 2d 476, 479, 5 P. 3d 1012 (2000), *affd.* 270 Kan. 526, 17 P.3d 359 (2001), we do not interpret these references as a license to ignore or discount the recognized exceptions to the warrant requirement. Rather, we think it wise to avoid "the wild card of general reasonableness" as the rationale for our decisions in Fourth Amendment cases. See *Alaska v. Myers*, 601 P.2d 239, 245-46 (Alaska 1979) (Boochever, C.J., dissenting) (vague "reasonableness" standard; "leave it to the officer on the beat . . . [and] the trial judge" to make an unguided determination); see also *Bute*, 43 F.3d at 534-35 (precedent "neither establishes nor condones application of an amorphous 'reasonableness' test" to determine constitutionality of warrantless search; clearly defined exception to warrant requirement must apply). A vague standard resting only on an individual judge's or an individual law enforcement officer's idea of what is "reasonable" in any of myriad combinations of circumstances is bound ultimately to yield inconsistent, and consequently unfair, results.

We are thus faced with three options: (1) We can affirm, holding that this search fits within one of the exceptions to the warrant requirement already recognized in Kansas; (2) we can affirm, outlining and applying a new exception for Kansas cases; or (3) we can reverse, holding that none of the existing exceptions applies and declining to carve out a new one to fit nighttime security sweeps of unexpectedly open and lit commercial premises.

The district court chose the second option, electing to follow *Banks* in recognizing a new security check exception. Baughman argues this was error, because of the earlier *Bute* decision from the Tenth Circuit.

In *Bute*, police officers observed an open garage door on a commercial building about 11 p.m. No vehicles were in the garage; no one was in or around the building; there was no sign of forced entry. Suspecting an earlier burglary or vandalism, one of the officers entered through the open garage door to check out the sit-

uation and immediately smelled a very strong odor. Unable to identify it, he opened each of three doors along the wall in the garage. Behind the third door, he found a methamphetamine lab. A search warrant was obtained and executed, and physical evidence was collected. As in this case, the district court in *Bute* denied the defendant's motion to suppress. *Bute*, 43 F.3d at 533-34.

On appeal, the Tenth Circuit declined to follow *California v. Parra*, 30 Cal. App. 3d 729, 106 Cal. Rptr. 531, *cert. denied* 414 U.S. 1116 (1973); *Myers*, 601 P.2d 239; and *Illinois v. Gardner*, 121 Ill. App. 3d 464, 459 N.E.2d 676 (1984). *Bute*, 43 F.3d at 535-37. Each of those three cases had permitted warrantless searches of commercial premises left unlocked or open at night; each had followed a different route to that common conclusion.

*Parra* was first in time. In that case, a citizen reported around nightfall that a front door of a closed florist shop was open, and a police officer responded. The door could not be locked without a key. The officer was initially unsuccessful in finding the name of the proprietor, despite looking around inside the business and contacting his dispatcher. He and a back-up officer then resorted to a more diligent search, entering a back part of the store and opening a desk drawer. There they found drugs. The court invoked the Restatement (Second) of Torts § 197 for the proposition that a person who ordinarily would be considered a trespasser

"is privileged to enter and remain on land in the possession of another if it reasonably appears to be necessary to prevent serious harm to the land or chattels of the other party, unless the actor has reason to know that the one for whose benefit he enters is unwilling that he shall take such action." 30 Cal. App. 3d 729 at 732-33.

*Myers* came next. In that case, police officers on routine patrol observed a light in a normally dark exterior corridor at 2:30 a.m. As they approached its source, they saw that a fire exit of a closed theater had been propped open. They entered the theater and found defendant and others using drugs. The majority of the Alaska Supreme Court based its approval of this search on its belief that occupiers of commercial premises have a less intense expectation of privacy than occupiers of residential premises. And, "[w]hen a police intrusion takes place in a context in which only a 'diminished

expectation of privacy' exists, such a search must be 'reasonable' within the meaning of the Constitution, but may not necessarily be subject to the warrant requirement." 601 P.2d at 242. It observed that, at 2:30 a.m., "when the doors close, the [business] owner has gone home, and night falls, the owner's interest is normally not the protection of private conduct; at such a time, when the property is most vulnerable to burglary, the security of the premises ordinarily becomes the paramount interest." 601 P.2d at 243. Accordingly, the court said:

"[W]e hold that law enforcement personnel may enter commercial premises without a warrant only when, pursuant to a routine after-hours security check undertaken to protect the interests of the property owner, it is discovered that the security of the premises is in jeopardy, and only when there is no reason to believe that the owner would not consent to such an entry. In the context with which we are immediately concerned, locked premises must be taken as indicating that no warrantless entry is authorized. Any search conducted incident to a legitimate entry must be brief and must be limited and necessary to the purpose of ensuring that no intruders are present on the premises. In addition, someone responsible for the premises must be informed, as soon as is practicable, of the protective measures taken." 601 P.2d at 244.

In *Gardner*, the court examined a police officer's nighttime entry into an auto repair shop through a closed but unlocked door checked during a routine patrol. Once inside, the officer found a stolen car. Although the court said it was "well settled in Illinois that the protection of the Fourth Amendment extends to commercial premises in which there is a reasonable expectation of privacy against governmental intrusion," 121 Ill. App. 3d at 468, its "distillation" of the *Myers* and *Parra* cases led it to hold that

"in certain limited circumstances law enforcement officials may enter an unsecured or unlocked commercial establishment during a nighttime security check to secure the premise and may take necessary measures to ascertain the identity of the proprietor. However, the courts will be vigilant to ensure that the rationale of protecting private property is not employed as a subterfuge to seek out evidence of criminal conduct. [Citation omitted.]" 121 Ill. App. 3d at 470.

The court was unimpressed by defendant's argument that the officer should have contacted him before proceeding. Once the stolen car was discovered, the court said, it was understandable that "the urgency of contacting the owner of the building . . . may

have taken second place to or been eclipsed by the subsequent attempt to secure a search warrant for the premises." 121 Ill. App. 3d at 471.

In *Bute*, the Tenth Circuit panel rejected what it termed a "wholesale exception" to the warrant requirement because "it makes no accommodation for the particular nature and circumstances surrounding individual buildings." 43 F.3d at 537.

> "In so holding, we are mindful both of an officer's desire to protect the citizens and property on his or her patrol and the public's expectation regarding the protection of commercial property. In holding as we do, we do not suggest an officer can never enter commercial premises that are left open at night. We simply conclude a warrantless entry only is permitted under the Fourth Amendment when the officer has an objectively reasonable belief that an emergency exists requiring immediate entry to render assistance or prevent harm to persons or property within. While the infinite array of facts that may satisfy this requirement must be assessed on a case-by-case basis, it is clear that observing an open and unsecured building, without more, does not. In our judgment, the Fourth Amendment rights of all citizens outweigh the (lesser) expectations of some business owners that law enforcement authorities will enter and secure commercial premises found open at night." 43 F.3d at 539-40.

In *Banks*, the Georgia decision relied upon by the district court in this case, police officers on routine patrol about midnight were surprised to see a light burning in a commercial building and two unfamiliar cars parked nearby. Aware that two businesses on the same beat had been burglarized the night before, they checked the door of the business. Finding it unlocked, they entered the building, immediately smelled burning marijuana, and then discovered the defendant-owner. He led them to a back room containing marijuana smoke and a marijuana pipe and gave the officers the marijuana he had on him.

The *Banks* court cited *Gardener, Parra,* and *Myers* on its way to holding that officers who find an unlocked closed business during a normal security sweep may conduct a limited intrusion for the purpose of securing the area and making sure no intruders are present. 229 Ga. App. at 415-16. It noted the Tenth Circuit's expressed concern in *Bute* about creating a "wholesale exception" and found such an intrusion proper only when: (1) the officer holds a reasonable belief that the building's owner or rightful occupants

would not object to the intrusion and (2) circumstances are sufficient to give the officer an articulable suspicion that unauthorized persons are on the premises. 229 Ga. App. at 416-17.

Florida has also weighed in on a similar search.

In *State v. Bell*, 249 So. 2d 748 (Fla. Dist. App. 1971), a patrolling police officer observed a light burning and a blanket covering the rear window of a business at 3:30 a.m. Upon checking the front door, he found it closed but unlocked. Believing a burglary was in progress, he summoned backup, and the two officers entered the business unannounced. They found defendants and drugs within. Interpreting and applying a Florida statute prohibiting an unannounced entry except in specific circumstances, the court said that the officer reasonably believed announcement of his entry was excused because he might have exacerbated a dangerous situation. In addition, the court said the search was reasonable because it was consistent with the officer's duty to pursue crime prevention. 249 So. 2d at 750-51.

Despite these diverse authorities from sister states, we, like the Tenth Circuit, are not persuaded that recognition of a new "wholesale exception" to the warrant requirement for nighttime security checks of commercial buildings is necessary or wise. We hold, however, that the particular warrantless entry and ensuing limited search at issue here were permissible under the emergency doctrine previously recognized and applied in Kansas.

In *Jones*, 24 Kan. App. 2d at 410-13, we analyzed earlier mentions of the emergency doctrine in Kansas appellate decisions, concluding that only *State v. Jones*, 2 Kan. App. 2d 38, relied solely on the doctrine for decision. We endorsed a three-part test to determine whether the doctrine should be applied in a given case, stressing the need for a common sense approach:

" '(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

" '(2) The search must not be primarily motivated by intent to arrest and seize evidence.

" '(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.' " 24 Kan. App.

2d at 413 (quoting *People v. Mitchell*, 39 N.Y.2d 173, 177-78, 383 N.Y.S.2d 246, 347 N.E.2d 607 [1976]).

In this case, we are satisfied that all three of these criteria are met. The officers' observations of a light within the business and its outside door ajar after dark gave rise to a reasonable belief that there was an emergency at hand and an immediate need for their assistance for the protection of life or property. Although the officers could have made an effort to contact Baughman, they were not required to do so here, given the lateness of the hour and the need to respond to the possible emergency without delay. On this point, it is also persuasive that law enforcement officers had executed similar checks of these particular premises in the past, that Baughman had known of the checks, and that he had expressed no disapproval.

As to the second prong of the test, the officers entered the commercial premises not because they were motivated to catch the proprietor in criminal activity but because they wanted to protect him and his belongings. This protection motivation satisfies this prong.

As to the third prong, the officers possessed the necessary probable cause—not that a crime was being committed—but certainly that the area to be searched was associated with the possible emergency. It was in fact the only area open and lit at an odd hour.

As we stated in *Jones*:

"The emergency doctrine reflects a recognition that the police perform a community caretaking function which goes beyond fighting crime. [Citation omitted.] Under this function, the community looks to the police to render aid and assistance to protect lives and property on an emergency basis regardless of whether a crime is involved. Warrantless entries into and searches of private property pursuant to this exception are not prohibited by the Fourth Amendment to the United States Constitution or by Section 15 of the Kansas Constitution Bill of Rights." 24 Kan. App. 2d at 409-10.

The officers in this case were engaged in exactly such a "community caretaking function" when they entered Baughman's business, and it was reasonable to behave as they did. There was no violation of Baughman's Fourth Amendment right to justify suppression of the evidence ultimately seized. The district judge's de-

cision can be upheld despite its reliance on *Banks*. See *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999) (district court's decision which reaches the right result will be upheld even though the court relied upon the wrong reason for the decision).

Affirmed.