(242 P.3d 1216)
No. 103,373

RODNEY P. WRINKLE, *Appellant*, v. GENE NORMAN and CHARLENE NORMAN, *Appellees*.

Opinion filed November 12, 2010.

*Stephen G. Dickerson*, of The Dickerson Law Group, of Olathe, for appellant.

*Robert J. Luder*, of Long & Luder, P.A., of Overland Park, for appellee.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT J.: Rodney P. Wrinkle filed a negligence action against his neighbors, Gene and Charlene Norman (the Normans), after he sustained injuries on their property. The district court granted summary judgment in favor of the Normans, finding that they did not breach a duty to Wrinkle. Wrinkle appeals. We affirm.

At the time of Wrinkle's accident, Wrinkle lived across U.S. highway 59 from the Normans in Oskaloosa, Kansas. The Normans had 20 acres of pasture land along the west side of the highway on which they raised cattle. The pasture is fenced and has a 16-foot panel gate.

On March 10, 2006, while riding his lawn tractor, Wrinkle observed four or five cattle running loose in the ditch near the Normans' property, approximately 10 to 12 feet from the highway. Wrinkle herded the cattle onto the Normans' property toward a pen with an open gate. According to Wrinkle, the cattle were "returning from where they came from" and "knew where they was going." Wrinkle was able to get all of the cattle into the pen except for one that became entangled in a clothesline wire. Wrinkle removed the wire from around the animal's neck. As the animal ran

toward the gate, the wire with a T-shaped clothesline pole attached to it flipped and hit the back of Wrinkle's legs. Wrinkle fell and fractured his back on a concrete path.

Wrinkle filed suit against the Normans, alleging they had negligently and carelessly allowed the clothesline wire to run across the ground, thereby creating a dangerous condition that presented an unreasonable risk of harm. Wrinkle claimed that he was lawfully on the Normans' property when he was injured.

The Normans moved for summary judgment, contending that Wrinkle entered their property without an invitation or permission and, as such, he was trespassing at the time of his injury. The Normans denied liability and argued that the only duty they owed Wrinkle was to refrain from willfully, wantonly, or recklessly causing him injury. The Normans further claimed that they had no notice or knowledge of cattle escaping from their fence on March 10, 2006, or of any defective condition relating to their fence or clothesline wire.

In response, Wrinkle asserted that summary judgment was not appropriate because he was a licensee on the Normans' property, not a trespasser. He claimed the Normans "owed a duty of reasonable care, under all of the circumstances, to maintain their property and keep it safe." Wrinkle relied upon the doctrine of private necessity in the Restatement of Torts (Second) § 197 (1965), alleging that he was privileged to enter the Normans' property in order to prevent serious harm to highway, individuals, or the cattle. Wrinkle also argued that summary judgment was inappropriate because the Normans were subject to liability under K.S.A. 47-123 for negligently confining their cattle.

After hearing arguments from counsel, the district court granted the Normans' summary judgment motion, holding that Wrinkle was a trespasser on the Normans' property; the Normans only owed Wrinkle a duty to refrain from willfully, wantonly, or recklessly causing him injury. The court found as a matter of law that the Normans did not breach a duty owed to Wrinkle. Wrinkle filed a motion to alter or amend the judgment, which the district court denied. Wrinkle timely appeals.

## Summary Judgment

When granting summary judgment, the district court must review the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, to determine whether there is a genuine issue of material fact which would entitle the moving party to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, a party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be reversed if reasonable minds could differ as to the conclusions drawn from the evidence. *Shamberg, Johnson, & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

In reviewing the district court's grant of summary judgment, it is important to remember that summary judgment should be granted with caution in negligence actions. *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008). However, summary judgment is appropriate in a negligence action if the defendant shows there is no evidence to support a negligence claim. *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 904, 166 P.3d 1047 (2007). Summary judgment is also proper in a negligence action if the only questions presented are questions of law. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

## Trespasser or Licensee

To establish a claim for negligence, Wrinkle had to prove the existence of a duty, a breach of the duty, an injury, and a causal connection between the duty breached and the injury. The existence of a duty is a question of law. Whether the duty has been breached is a question of fact. *Reynolds v. Kansas Dept. of Trans-*

*portation*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002). The duty owed by defendants to Wrinkle is determined by Wrinkle's status while he was on the Normans' property. The question is whether he was an invitee, a licensee, or a trespasser.

Wrinkle contends that he was a licensee on the Normans' property and the district court erred in determining that he was a trespasser.

An invitee is " 'one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee.' " *Jones v. Hansen*, 254 Kan. 499, 503, 867 P.2d 303 (1994). A licensee is " 'one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, or by operation of law, so that he [or she] is not a trespasser thereon.' " 254 Kan. at 503. A trespasser is " 'one who enters on the premises of another without any right, lawful authority, or an express or implied invitation or license.' " 254 Kan. at 503.

Our Supreme Court has held that "[t]he duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all the circumstances." 254 Kan. at 509. In contrast, the duty owed by an occupier of land to trespassers is "to refrain from willfully, wantonly, or recklessly injuring" the trespasser. 254 Kan. at 510.

Wrinkle admits that he did not have express permission or consent to enter the Normans' property. Wrinkle was not an invitee. The question remains whether Wrinkle was a licensee or a trespasser. Wrinkle argues that he was a licensee, relying primarily on the Restatement (Second) of Torts § 197.

Section 197 provides, in relevant part: "One is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to . . . the other or a third person, or the land or chattels of either . . . ." Comment a to § 197 provides:

"The privilege [of private necessity] exists only where in an emergency the actor enters land for the purpose of protecting himself or the possessor of the land or

a third person or the land or chattels of any such persons. Furthermore, the privilege must be exercised at a reasonable time and in a reasonable manner."

The only Kansas case that mentions the Restatement (Second) of Torts § 197, *State v. Baughman*, 29 Kan. App. 2d 812, 32 P.3d 199 (2001), is not instructive for this case. *Baughman* is a Fourth Amendment search and seizure case that briefly mentions § 197 while discussing a California case that had relied on this section. 29 Kan. App. 2d at 816. The *Baughman* court did not follow or adopt § 197.

Wrinkle contends that he was privileged to enter the Normans' property because it was, or reasonably appeared to be, necessary to prevent serious harm to individuals or the Normans' cattle. Wrinkle acknowledges that Kansas courts have not expressly adopted or applied § 197 but urges this court to do so.

Wrinkle's argument is incomplete. Even if Wrinkle were privileged to enter the Normans' property, § 197 only relieves Wrinkle of liability for doing so and has nothing to do with the scope of the Normans' duty to Wrinkle. In order for Wrinkle's status to change pursuant to this section, this court would also have to adopt Restatement (Second) of Torts § 345 (1965), which states, in relevant part, that "the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee." Wrinkle's brief focuses on § 197 and only gives passing mention to § 345; however, both sections are essential to establish an exception to the usual trespasser rule which would provide that a would-be trespasser who enters onto the land of another based on private necessity is classified as a licensee.

Like § 197, § 345 has never been adopted by Kansas courts. An Illinois Appellate Court implicitly adopted § 345 in *West v. Faurbo*, 66 Ill. App. 3d 815, 817-18, 384 N.E.2d 457 (1978), and more recently held that a landowner does not automatically owe a higher duty to every trespasser who enters land pursuant to a private necessity. *Lange v. Fisher Real Estate Develop.*, 358 Ill. App. 3d 962, 969, 832 N.E.2d 274 (2005). In so holding, the *Lange* court relied

upon the reasoning in *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 91-92, 689 N.E.2d 366 (1997):

" 'One could argue, as the plaintiff does, that a trespasser who enters the property of another under private necessity, considered to be a licensee, is now entitled to the greater protection of reasonable care since there is no longer a distinction between licensees and invitees. We would disagree with such an argument. We believe that the abolishment of the licensee/invitee distinction in Illinois would not heighten the duties owed by a possessor of land to a person who enters his land under private necessity. There can be no logical reason to afford a greater protection of reasonable care to such a person, who, in actuality, is a trespasser and who enters the property without the possessor's permission and without benefit to the possessor.' " 358 Ill. App. 3d at 970.

Kansas, like Illinois, has abolished the licensee/invitee distinction. *Jones*, 254 Kan. at 509. In the instant case, there was no evidence that the cattle were owned by the Normans. Wrinkle apparently assumed that the cattle belonged to the Normans because they were wandering near the Normans' property and ran toward a gate on the Normans' property. However, Gene Norman denied that his cattle were on his property on March 10, 2006. Gene testified that prior to March 5, 2006, he had about 30 head of cattle on his property. Gene also testified that he moves his cattle off of his property the first week of March every year and brings some of them back around the first of May. Gene provided names of other individuals who pasture cattle on either side of his property. Thus, Wrinkle not only entered the Normans' property without permission, but also arguably without benefit to the Normans. Accordingly, Wrinkle is not entitled to protection as a licensee under § 345.

The duty owed by the Normans to Wrinkle, a trespasser, was to refrain from willfully, wantonly, or recklessly causing him injury. See *Jones*, 254 Kan. at 510. There is nothing in the record to suggest, nor does Wrinkle contend, that a genuine issue of material fact exists regarding whether the Normans breached this duty.

The district court properly determined that Wrinkle was a trespasser.

### K.S.A. 47-123 Claim

Wrinkle also contends that summary judgment was improper

because there are material fact issues regarding whether the Normans are liable for their cattle running at large under K.S.A. 47-123.

Wrinkle did not plead a claim under K.S.A. 47-123 as a separate and distinct theory of liability in his original petition for damages but did reference the statutory provision in his response to the Normans' motion for summary judgment. Thereafter, Wrinkle requested leave to file a second amended petition which included a separate cause of action under K.S.A. 47-123. The district court denied the request, finding that the allegations in Wrinkle's proposed second amended petition were included in his response to the Normans' summary judgment motion and had been considered by the court. Although the district court did not explicitly rule on Wrinkle's K.S.A. 47-123 argument, by granting the Normans' summary judgment motion, the court implicitly rejected it.

K.S.A. 47-122 makes it "unlawful for any domestic animal, other than dogs and cats, to run at large." Further, K.S.A. 47-123 provides that any livestock owner in violation of K.S.A. 47-122 shall be "liable to the person injured for all damages resulting therefrom, and the person so damaged shall have a lien on said livestock for the amount of such damages."

The doctrines of strict liability and res ipsa loquitur do not apply in livestock escape cases. In order to recover for damages, the injured party must prove negligence, *i.e.*, that the livestock owner failed to exercise ordinary care to keep the livestock fenced. *Harmon v. Koch*, 24 Kan. App. 2d 149, 153, 942 P.2d 669 (1997); *Walborn v. Stockman*, 10 Kan. App. 2d 597, 598-599, 706 P.2d 465 (1985). An owner of animals is required to use reasonable care to confine his or her animals, but absolute security is not required. *Clark v. Carson*, 188 Kan. 261, 264-65, 362 P.2d 71 (1961). Accordingly, Wrinkle, as the party opposing summary judgment, must come forward with evidence to establish a dispute as to a material fact regarding the Normans' failure to exercise due care in keeping their cattle enclosed.

Wrinkle cannot meet this burden. First, ownership of the cattle involved in Wrinkle's accident was never established. Although Wrinkle assumed that the cattle belonged to the Normans, Gene

Norman denied that they were his and provided the names of other individuals who pasture cattle on either side of his property.

Further, there was no evidence to show that the Normans failed to exercise due care in containing their cattle.

Wrinkle argues that the present case is similar to *Cooper v. Eberly*, 211 Kan. 657, 508 P.2d 943 (1973). In *Cooper*, evidence of a horse owner's negligence in failing to take reasonable precautions to confine his horses included a failure to padlock a gate which was found open after an accident, and knowledge that horses had escaped on prior occasions. 211 Kan. at 660, 665-66, 669. Wrinkle contends that, as in *Cooper*, the Normans' pasture gate was found unsecured and partially open prior to the accident and there were reports that the Normans' cattle had been out of their pasture on at least three occasions prior to March 10, 2006. Wrinkle claims that these facts provide a sufficient basis to find that the Normans are liable under K.S.A. 47-123.

Although Wrinkle alleges that the gate he herded the cattle towards did not have a secure lock, there is no evidence in the record on appeal that the cattle actually escaped from this gate. As for Wrinkle's contentions that the Normans' cattle had been seen running loose on several occasions prior to March 10, 2006, there is no indication that the Normans ever had notice of these alleged prior escapes. Both Gene and Charlene testified that they could only recall one time, when a single calf got out of a fence on their property. Moreover, Wrinkle testified that he never notified the Normans on the occasions when he allegedly observed their cattle outside of their pen and did not know if anyone else had ever notified them.

It is well established that "[a] party opposing summary judgment may not rest merely on allegations, but must set forth specific facts to support its position." *Lloyd v. Quorum Health Resources, LLC*, 31 Kan. App. 2d 943, 954, 77 P.3d 993 (2003); see K.S.A. 2009 Supp. 60-256(e). Furthermore, "[t]he law is clear that 'an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." 31 Kan. App. 2d at 954. The evidence in Wrinkle's response to the Normans' summary judgment motion merely created a conjecture or

possibility that the Normans owned the cattle that he herded onto their property on March 10, 2006. Assuming that ownership of the cattle was established, the evidence brought forward by Wrinkle merely raised the possibility that the Normans had failed to exercise due care in containing their cattle. Therefore, Wrinkle's claim under K.S.A. 47-123 presents no genuine issues of material fact.

Affirmed.