NOT DESIGNATED FOR PUBLICATION

No. 112,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RODNEY P. WRINKLE,
*Appellant*,

v.

GENE NORMAN and CHARLENE NORMAN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed February 12, 2016. Affirmed.

*Stephen G. Dickerson*, of The Dickerson Law Group, of Overland Park, for appellant.

*Robert J. Luder* and *Michael W. Shunk*, of Luder & Weist, LLC, of Overland Park, for appellees.

Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.

ATCHESON, J.: Our innate sense of fairness winds up bruised when a Good Samaritan is seriously injured and must bear the financial consequences of that injury, especially if the chain of events leading to the harm includes another person's carelessness. At the same time, basic principles of negligence law do not impose liability on a person whose carelessness is merely a remote link in a chain culminating in what amounts to an unpredictable injury to someone else. In this case, that innate sense collides with those legal principles. Even taking the facts most favorably to Plaintiff Rodney P. Wrinkle—indisputably a Good Samaritan on an early spring afternoon in

1

2006—the legal principles win out here. We, therefore, affirm the Jefferson County District Court's entry of summary judgment for Defendants Gene and Charlene Norman.

The case has a lengthy history and has already made one trip to the Kansas Supreme Court, which reversed an earlier summary judgment for the Normans. *Wrinkle v. Norman*, 297 Kan. 420, 301 P.3d 312 (2013) (*Wrinkle I*).

We first offer an overview of the facts rendered favorably to Wrinkle as the party opposing summary judgment.

Wrinkle, a neighbor of the Normans, saw some of their cows had escaped from a pen and were headed toward the highway. Although Wrinkle had no legal obligation to do anything, he did what we would like to think most people would do. He herded the cows back onto the Normans' land and, except for a calf, into the pen in the backyard, thereby rescuing the animals and preventing a serious hazard to motorists. The calf somehow got tangled up in a clothesline Gene Norman had temporarily taken down. According to Wrinkle, the calf was strangling as it futilely struggled to get free. Wrinkle could have walked away—the calf was no longer on the loose and posed no danger to passersby. Moved by the plight of a young animal in life-threatening distress, he didn't. Wrinkle untangled the clothesline, liberating the calf. The calf immediately bolted toward the gate of the pen. The calf somehow dragged the clothesline as it ran; the line caught Wrinkle from behind, knocking him off his feet. Wrinkle landed on his back on a concrete pad between the poles used to string the clothesline. Wrinkle seriously injured his back, resulting in an extended hospitalization.

After Wrinkle was released from the hospital, he spoke with the Normans, who he did not really know, about submitting a claim for his medical bills to their homeowner's insurance carrier. The record isn't entirely clear whether a claim was filed or what

2

became of it. We infer the insurance company did not pay Wrinkle's medical bills and plainly did not resolve the matter to his full satisfaction.

In December 2007, about 22 months after the incident, Wrinkle filed a civil action against the Normans to recover damages related to his injury. The petition went through a couple of amendments. Wrinkle alleged the Normans negligently failed to keep their cows penned and negligently placed the clothesline in such a way the calf got caught. He also alleged his back injury was the legal consequence of the Normans' negligence. The Normans denied liability.

The parties undertook discovery. During his deposition, Gene Norman described the mechanism for keeping the gate on the cow pen shut. He also testified that he had taken down the clothesline and looped it around one of the T-shaped poles on the concrete pad when he had been cutting trees in the yard sometime before Wrinkle was hurt. Wrinkle testified during his deposition that he had not noticed the clothesline or how it was positioned before the calf had become entangled.

The district court initially granted summary judgment to the Normans on the grounds that Wrinkle was a trespasser on their property and they did not breach the limited duty landowners owe trespassers. See *Jones v. Hansen*, 254 Kan. 499, 510, 867 P.2d 303 (1994) (landowner liable only for "willfully, wantonly, or recklessly injuring" trespasser). This court affirmed in *Wrinkle v. Norman*, 44 Kan. App. 2d 950, 242 P.3d 1216 (2010), *rev'd* 297 Kan. 420, 301 P.3d 312 (2013); the Kansas Supreme Court reversed in *Wrinkle I*. The Supreme Court held that Wrinkle should not have been treated as a trespasser but as the holder of a privilege to enter the Normans' land to prevent serious harm to the cattle, since the animals would have been imperiled if allowed to roam around the highway. 297 Kan. 424-25. Accordingly, the Normans owed Wrinkle a duty of reasonable care under the circumstances to protect him from potentially injurious conditions. 297 Kan. at 425.

Because the district court had applied an incorrect legal standard disadvantaging Wrinkle in entering summary judgment, the Supreme Court reversed and remanded to the district court for further proceedings. 297 Kan. at 426. Justice Rosen filed a separate opinion in which he agreed with his colleagues about the duty owed Wrinkle but dissented from the remand because the facts on summary judgment neither entailed a breach of a legal duty nor suggested a triable issue of proximate cause, since the Normans' putative negligence did not bring about a foreseeable injury. 297 Kan. at 428-29 (Rosen, J., concurring in part and dissenting in part).

On remand, the Normans filed another summary judgment motion that largely drew from Justice Rosen's opinion and the issues he discussed—a discussion the majority acknowledged but declined to address substantively. See 297 Kan. at 426. The district court again entered summary judgment for the Normans, this time finding they breached no duty owed Wrinkle and no legally proximate cause linked their conduct to his injuries. Wrinkle has appealed the district court's ruling.

We apply the same well-settled standard of review as the district court in testing the appropriateness of summary judgment. Parties seeking summary judgment have the obligation to show, based on sufficient evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in their favor as a matter of law. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009); *Korytkowski v. City of Ottawa*, 283 Kan. 122, Syl. ¶ 1, 152 P.3d 53 (2007). In essence, the movants (here, the Normans) argue there is nothing for a jury or a trial judge sitting as factfinder to decide that would make any difference. The party opposing summary judgment (here, Wrinkle) must then point to evidence calling into question a material factual representation made in support of the motion. *Shamberg*, 289 Kan. at 900; *Korytkowski*, 283 Kan. 122, Syl. ¶ 1. If the opposing party does so, the motion should be denied so a factfinder may resolve that dispute.

4

In addressing a request for summary judgment, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. We do likewise on appeal, and we have carefully done so in this case. See *Shamberg*, 289 Kan. at 900; *Korytkowski*, 283 Kan. 122, Syl. ¶ 1. Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the district court's decision to grant the motion and review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

To assess the legal propriety of the summary judgment against Wrinkle, we need to look at the anatomy of a negligence claim. A plaintiff ultimately must prove a legal duty owed by the defendant, a breach of that duty, an injury, and a causal connection between the breach and the injury. *Adams*, 289 Kan. at 585-86; *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002). Negligence itself has been defined generally as a defendant's acting in a way a reasonable person would not in the same circumstances or failing to act in a way that a reasonable person would. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 756, 217 P.3d 450 (2009). Either a defendant's affirmative conduct or inaction may be negligent depending on the circumstances.

Implicit in those principles is the fundamental tort concept that a defendant should not be liable in a negligence action when a plaintiff's injury results from a sequence of events in which that harm is so attenuated or removed from a defendant's conduct as to be unpredictable or unforeseeable. Prosser and Keeton, Law of Torts § 43, p. 280 (5th ed. 1984) (Negligence "necessarily involves a foreseeable risk," so if the defendant's "conduct was reasonable in light of what one could anticipate, there would be no negligence, and no liability.").

5

The foreseeability of Wrinkle's injury is the key legal issue on appeal. Since the advent of comparative fault under K.S.A. 60-258a, the Kansas Supreme Court has dealt with the concept of foreseeability in negligence actions in a couple of ways. For example, in *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 920, 257 P.3d 287 (2011), the court explained that a legal duty supporting a negligence claim requires that "the probability of harm be foreseeable." Similarly, the court has said that "[the] duty of care is intertwined with the foreseeability of harm." *Shirley v. Glass*, 297 Kan. 888, 900, 308 P.3d 1 (2013). Whether a legal duty exists is, itself, a question of law for the court rather than a fact issue for the jury. *Berry*, 292 Kan. at 920.

The court has also considered foreseeability as a component of proximate cause. *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015) ("To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable."). Accordingly, in a negligence case, proximate cause precludes imposing liability on a person for every possible harm resulting from his or her conduct—liability will attach only to "'those consequences that are *probable* according to ordinary and usual experience.'" *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010) (quoting *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 [2008]); *Zimmerman v. Brown*, 49 Kan. App. 2d 143, 157, 306 P.3d 306, *rev. denied* 298 Kan. 1209 (2013). Proximate cause typically presents a question of fact for the jury. *Hale*, 287 Kan. at 324; *Zimmerman*, 49 Kan. App. 2d at 157-58. But a district court may decide causation against a plaintiff as a matter of law if the evidence permits no reasonable inference that could support proximate cause. See *Siruta v. Siruta*, 301 Kan. 757, 767, 348 P.3d 549 (2015); *Hale*, 287 Kan. at 324.

Defining negligence in terms of what a hypothetical "reasonable person" would do also necessarily incorporates foreseeability. The defendant in a given situation need not actually think about or contemplate the mechanism of harm for it to be foreseeable.

Rather, the mechanism need be a reasonably predictable consequence of the defendant's conduct. See *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 695-96, 339 P.2d 702 (1959); Prosser and Keeton, Law of Torts § 32 (1984). But if the risk of a particular harm arising from a given action or failure to act could not be foreseen, then a reasonable person ought not be faulted—at least in a negligence action—for behaving in that manner.

Those concepts of negligence are equally applicable in premises liability cases involving persons having a privilege to enter, since the occupier's duty is grounded in reasonableness under the circumstances. See *Wrinkle I*, 297 Kan. at 425; *Jones*, 254 Kan. at 509-10 (duty of reasonable care occupier of land owes privileged entrant includes foreseeability of harm).

The most challenging aspect of this case may be labeling the issue, consistent with Kansas law, as one of legal duty, proximate cause, or foreseeability generally. Because we have reviewed the facts in a light favoring Wrinkle, affording him the benefit of any dispute that might be found in the material circumstances, the labeling isn't especially important. Given our approach to the record evidence, the matter boils down to a question of law however the governing negligence concept may be characterized.

We, therefore, assume the Normans were negligent in how they went about keeping the gate to the cow pen closed. Accordingly, it would be foreseeable that the cows might get loose and, in turn, that someone would attempt to rescue them. If a rescuer were kicked or trampled by one of the cows while herding the animals back onto the Normans' land or into the pen, the person presumably would have a triable negligence claim. There might be a comparative fault argument in that situation if the rescuer, being unfamiliar with the habits of cows, did something to provoke one or more of them.

Similarly, we suppose had the Normans maintained their land, especially near the pen, in a way that reasonably could pose a hazard, they might be liable to a rescuer for injuries directly resulting from that condition. For example, if the Normans had cut down a tree and pulled up the stump, leaving a hole in their backyard, a reasonable person might conclude the condition posed a risk, especially were the grass overgrown or the hole otherwise less than obvious. Again, there could be a triable negligence claim had a cow rescuer stepped in the hole as he or she was preoccupied with getting the animals into the pen. In other words, it might be for a jury to say whether reasonable landowners in those circumstance should have known their cows might get out and someone bringing them back might step in the hole.

Here, however, the injury to Wrinkle looks to have arisen from unforeseeable circumstances quite different from our examples. Again to Wrinkle's benefit, we assume negligence on the Normans' part in maintaining the gate to the pen. But nothing in the facts regarding the temporary placement of the clothesline—looped around one of the two poles between which it ordinarily would have been strung—suggests it posed a danger to anyone coming on the land. Nor was it, in our view, reasonably foreseeable that the clothesline would ensnare a cow either escaping from the pen or being herded back into the pen. Even at that, however, Wrinkle wasn't injured by the calf as he extricated it from the clothesline—we again suppose a cow caught in that fashion could be especially skittish or frightened and might injure a dutiful rescuer in its own efforts to escape. Wrinkle successfully freed the calf and wasn't injured until the calf, running toward the pen, pulled the clothesline in such a way it tripped him from behind. The immediate mechanism of injury, then, forged yet another highly unusual link in the chain removing the harm from the original placement of the clothesline. The sequence of events amounted to an unforeseeable scenario—something a reasonable person could not be expected to anticipate or prevent. Justice Rosen aptly termed it "bizarre." *Wrinkle I*, 297 Kan. at 430 (Rosen, J., concurring in part and dissenting in part).

8

To be sure, had the clothesline been strung between the poles, well above the ground, Wrinkle would not have been injured. The placement of the clothesline was indeed a link in the chain leading to Wrinkle's injury. That is, but for Gene Norman's decision to loop the clothesline around the pole, Wrinkle would have been fine. Negligence law, however, rejects "but for" causation as a sufficient condition for imposing liability. *Drouhard-Rosenquist*, 301 Kan. at 623. Using such a standard alone would be akin to transforming negligence into strict liability. See *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 473-74, 284 P.3d 1049 (2012) (outlining Kansas law of strict liability). To establish negligence, a plaintiff must also show legal causation dependent upon the foreseeability of harm. *Drouhard-Rosenquist*, 301 Kan. at 623.

If we look at the facts in the context of legal duty, we must conclude the Normans—or the hypothetical reasonable person in the same circumstances—could not have anticipated the injury to Wrinkle. Accordingly, the probability of harm was not foreseeable, and the Normans had no legal duty to do something different than they did with the clothesline. That determination is a question of law entrusted to us. Our conclusion furnishes a sufficient basis for summary judgment in favor of the Normans.

Turning to proximate cause, having looked at the evidence in the best light for Wrinkle and having resolved any material factual dispute his way, we may consider the issue even though it would customarily be left for the jury at trial. Even with that deferential assessment of the evidence, Wrinkle cannot show that a jury properly could find for him on legal causation. The injury that befell him simply was not a foreseeable consequence of leaving the clothesline looped around the pole. That conclusion provides a second and independently sufficient basis for summary judgment.

Apart from the substantive legal issues, Wrinkle has argued on appeal that the district court should not have considered the Normans' second summary judgment motion

9

at all based on law of the case and the decision in *Wrinkle I*. We disagree. The law-of-the-case rule prevents a party from relitigating an issue that has already been considered and decided on appeal in that action. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1212, 308 P.3d 1238 (2013) ("The law of the case prevents relitigation of the same issues within successive stages of the same suit."); *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998) ("[O]nce an issue is decided by the [appellate] court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice."); *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 737, 334 P.3d 830 (2014), *rev. denied* 302 Kan. ___ (October 7, 2015).

The district court initially granted summary judgment to the Normans based solely on its conclusion Wrinkle was a trespasser and the concomitant duty of care. The only issue the Kansas Supreme Court decided in *Wrinkle I* was Wrinkle's legal status as either a trespasser or a privileged entrant on the Normans' land. Law of the case, therefore, would have precluded the Normans from filing another summary judgment motion on remand making additional arguments as to why Wrinkle trespassed. But the doctrine didn't prevent them from arguing different issues in a second summary judgment motion or reasserting issues from the first motion that were not decided in the appeal. So law of the case imposed no procedural barrier to the district court's consideration of such issues after the remand in *Wrinkle I*.

Wrinkle suggests the filing of serial summary judgment motions results in inefficient, piecemeal litigation and the Normans, therefore, should have raised and fully briefed all of the grounds in a single motion. Whatever benefits Wrinkle's suggestion might have for litigation practice generally, it bears on case management of summary judgment practice at the district court level and not on law-of-the-case principles.

Affirmed.